BURLINGTON VOLUNTARY RELIEF DEPARTMENT OF
    CHICAGO, BURLINGTON & QUINCY RAILROAD COM-
    PANY V. ANNA E. WHITE.

FILED JUNE 26, 1894.   No. 5226.

1. **Mutual Insurance Associations in Connection with Railroad Companies**: MEMBERSHIP: ASSESSMENTS: ES-
TOPPEL: WAIVER OF REQUIREMENTS: LIABILITY OF INSURER.
A relief department, in the nature of a mutual insurance asso-
ciation, was maintained in connection with a railroad company.
The members of the relief department were employes of the rail-
road company. By their contract of membership they authorized
the company to withhold from their wages certain sums to pro-
vide a fund for the payment of benefits in the case of sickness or
death of members.   The railroad company contracted to make
up any deficiencies in the funds so provided.   It also furnished
the clerks and other employes for conducting the affairs of the
department.   The department was under the general manage-
ment of a superintendent and subject to the supervisory control
of an advisory committee.   The by-laws of the department re-
quired an employe who desired to become a member to make
application in a prescribed manner and submit himself to a
physical examination.   His application was then subject to the
approval of the superintendent.   W. was an employe of the rail-
road.   July 21 he expressed to a soliciting agent of the depart-
ment his desire to become a member.   The agent gave written
notice of W.'s application to the superintendent of the depart-
ment, the paymaster of the road, and W.'s superior officer in
the employ of the road.   This notice specified July 21st as
the day when the application was to take effect.   July 22d W.
was taken sick.   No application was made in the form pre-
scribed by the by-laws and no physical examination was had.
No demand was made upon W. either for such application or for
such examination.   W.'s name was placed upon the roll of
members of the department, and from the July pay roll there
was deducted by the company for the benefit of the department
the assessment due from W. on the basis of membership from
July 21st to September 1st.   On August 7th the officers of the
department were notified of W.'s disability.   September 19th
the superintendent wrote to W.'s superior officer, stating that
W. was not a member of the department; that his contribution
should be refunded by time check, and that the notice of disa-

bility should be canceled. September 20th an instrument called a "time check" was tendered to W. and by him refused. A few hours thereafter W. died. *Held*, (1) That the department, by causing to be deducted from W.'s pay assessments on the basis of membership with knowledge of the fact that no formal application had been made and no examination had, was estopped from disputing W.'s membership; (2) that the fact that the relief department was a mutual insurance company did not relieve it from the operation of the rules of equitable estoppel; (3) that all of the transactions being with the knowledge of the superintendent of the department, there was no question of the authority of subordinate employes to waive requirements, their acts being in such case the acts of the department; (4) that the department was not relieved from liability because of a rule which provided that where an employe had made a proper application and passed a physical examination the department should only be liable during a delay in the approval of his application for injuries or death caused by accident. The department, under the facts stated, was estopped not only from denying that there had been an application and examination, but from denying that the application had been approved; (5) that the tender of the time check before W.'s death did not release the department from liability, first, because it was not a legal tender; and second, because liabilities had already accrued against the department from which it could not discharge itself by refunding the assessment.

2. ———: RULES OF DEPARTMENT: DECISION OF SUPERINTENDENT: RIGHTS OF BENEFICIARIES: ACTIONS. A rule of the department providing that all questions or controversies arising between any parties or persons in connection with the relief department or operation thereof, whether as to the construction of language, or the meaning of regulations, or as to any right, decision, or act in connection therewith, should be submitted to the determination of the superintendent, whose decision should be final, subject, however, to an appeal to the advisory committee, did not prevent the maintaining of this action, for the reasons (1) that in disclaiming W.'s membership before his death the superintendent was not acting judicially after a hearing of a controversy upon the subject, but was acting in an administrative capacity on behalf of the department alone; and (2) that this was not a controversy with the department as to transactions between it and a member, but was an action by the widow after W.'s membership had ceased to enforce a liability accruing to her. *Railway Conductors Mutual Aid & Benefit Association v. Loomis*, 43 Ill. App., 599, followed.

3. ———: BENEFICIARIES.   No beneficiary having been designated by W., the rules of the department construed and *held* to constitute W.'s widow his beneficiary.

ERROR from the district court of Cass county.   Tried below before CHAPMAN, J.

The facts are stated in the opinion.

*Marquett & Deweese, John H. Ames,* and *Byron Clark,* for plaintiff in error:

There was no beneficiary named, and the wife had no right to bring this suit. (Bacon, Benefit Societies & Life Insurance, sec. 241, and cases cited; Niblack, Mutual Benefit Societies, sec. 166a; *Esty v. Clark,* 3 Am. Rep. [Mass.], 320, and cases cited.)

It was error to instruct the jury that a person could become a member in a manner different from that prescribed by the association. (*Clevenger v. Mutual Life Ins. Co.,* 2 Dak., 114; Niblack, Mutual Benefit Societies, sec. 69.)

Retention of premium does not constitute a contract, but the application must be accepted before the minds of the parties meet, which is a necessary condition to completion. (*Alabama Gold Life Ins. Co. v. Mayes,* 61 Ala., 163; *Heiman v. Phœnix Mutual Life Ins. Co.,* 17 Minn., 153; *Taylor v. Merchants Fire Ins. Co.,* 9 How. [U. S.], 390; *Supreme Lodge Knights and Ladies of Honor v. Grace,* 60 Tex., 570; *Covenant Mutual Benefit Association v. Conway,* 10 Brad. [Ill. App.], 348.)

The officers of a mutual insurance company cannot waive by-laws which relate to the substance of a contract. (*McCoy v. Roman Catholic Mutual Ins. Co.,* 25 N. E. Rep. [Mass.], 289, and cases cited; *Bolton v. Bolton,* 73 Me., 299; *Sweet v. Citizens Mutual Relief Society,* 78 Me., 541; *Baxter v. Chelsea Mutual Fire Ins. Co.,* 1 Allen [Mass.], 294; *Evans v. Trimountain Mutual Fire Ins. Co.,* 9 Allen [Mass.], 329; *Burland v. Northwestern Mutual Benefit Association,* 11 N. W. Rep. [Mich.], 269.)

Officers cannot waive medical examination when the rules require it. (*Lyon v. Supreme Assembly Royal Society of Good Fellows*, 26 N. E. Rep. [Mass.], 236, and cases cited.)

Plaintiff in error did not waive requirements by inaction of its officers after receiving notice that the deceased intended to make application. (Bacon, Benefit Societies & Life Insurance, secs. 268, 270; *Globe Mutual Life Ins. Co. v. Snell*, 19 Hun. [N. Y.], 561; 1 Parsons, Contracts, 550; *Real Estate Mutual Fire Ins. Co. v. Roessle*, 1 Gray [Mass.], 336; *Misselhorn v. Mutual Reserve Fund Life Association*, 30 Fed. Rep., 545.)

Words of the by-laws become part of the contract and must receive the ordinary interpretation put upon contracts containing them. (*Wiggin v. Knights of Pythias*, 31 Fed. Rep., 124; *Rood v. Railway Passenger & Freight Conductors Mutual Benefit Association*, 31 Fed. Rep., 62.)

The following authorities are referred to on the question of estoppel: 2 Hermann, Estoppel, secs. 20–749; *Pickard v. Sears*, 6 Ad. & El. [Eng.], 469; 2 Pomeroy, Equity Jurisprudence, sec. 812.

*Matthew Gering*, for defendant in error:

The plaintiff in error is not entitled to have the rulings on evidence reviewed, for the reason that the errors complained of in its brief are not specifically pointed out in the petition in error. (*Lowe v. City of Omaha*, 33 Neb., 587; *Lowrie v. France*, 7 Neb., 192; *Tagg v. Miller*, 10 Neb., 442; *Birdsall v. Carter*, 11 Neb., 143.)

The company may waive the making of a formal application, and may make a valid contract of insurance, either by parol or in writing, without such application. (*Blake v. Exchange Mutual Ins. Co.*, 12 Gray [Mass.], 265; *Liberty Hall Association v. Housatonic Fire & Marine Ins. Co.*, 7 Gray [Mass.], 261; Bacon, Benefit Societies & Life Insurance, sec. 427.)

The acceptance by the association of the assessments'and premium is a waiver of the requirements relating to application and medical examination, and estops it from disputing the membership of deceased. (*Millard v. Supreme Council American Legion of Honor*, 22 Pac. Rep. [Cal.], 864; *Stylo v. Odd Fellows Mutual Ins. Co.*, 34 N. W. Rep. [Wis.], 151; *Schunck v. Gegenseitiger Wittwen und Waisen Fond*, 44 Wis., 369; *Erdmann v. Mutual Ins. Co.*, 44 Wis., 376; *Matt v. Roman Catholic Mutual Protective Association*, 30 N. W. Rep. [Ia.], 799; *Roswell v. Equitable Aid Union*, 13 Fed. Rep., 840; *Bloomington Mutual Life Benefit Association v. Blue*, 11 N. E. Rep. [Ill.], 333; *Tobin v. Western Mutual Aid Society*, 33 N. W. Rep. [Ia.], 664; *Mc-Donald v. Supreme Council*, 20 Pac. Rep. [Cal.], 41; *United Brethren Mutual Aid Society v. Schwartz*, 13 Atl. Rep. [Pa.], 769.)

IRVINE, C.

There is maintained in connection with the Chicago, Burlington & Quincy railroad and certain allied companies what is called "The Burlington Voluntary Relief Department," which is the plaintiff in error. This voluntary association is somewhat in the nature of a mutual benefit society, paying to its members stipulated sums during disability caused by sickness or accident, and paying to designated beneficiaries certain sums upon the death of members. The members are employes of the railroad companies operating the department. The employing railroad company contracts to make up deficiencies in the relief fund for the payment of losses accruing to those employes. It also furnishes clerks and other employes to conduct the affairs of the department. The department has a superintendent charged with the general conduct of its business, but subject to the supervisory control of an advisory committee, consisting of the general manager of the Chicago, Burlington & Quincy railroad, certain members chosen by the di-

rectors of that road, and other members chosen by employes of different divisions of the road who are members of the department. The method prescribed for obtaining membership is for the employe to make an application upon a form prescribed by the by-laws and submit himself to a physical examination by an examiner appointed by the department. His application is then passed upon by the superintendent, and if approved a certificate of membership is issued. The principal source of income is by deducting specified amounts monthly from the wages of the members. The railroad company makes this deduction and retains the fund, paying interest to the department upon monthly balances in its hands. These are the general features, to some of which it will be necessary hereafter to refer more specifically.

Landon T. White was in 1890 employed as an engineer by the Chicago, Burlington & Quincy Company. On July 21 of that year he met a soliciting agent of the department, also an employe of the company, and suggested to him his desire to become a member of the department. The agent then filled out, in triplicate, a printed form used for the purpose, headed "Notice of Application for Membership," stating the applicant's name, date at which application was to take effect, applicant's occupation, age, wages, and the class of membership to which he desired to be admitted. On this form the date at which the application was to take effect was stated as July 21, 1890, the day the form was filled and dated. One of these forms was sent to the superintendent at Chicago, one to the paymaster, and one to the superintendent of motive power. The following day White was taken sick. Upon a subsequent day the medical examiner called at his house, but testified that finding White not in a physical condition to make the examination none took place. According to Mrs. White some kind of an examination was made, but its nature does not appear. On August 7th the employe of the company charged with that duty filled out another form in triplicate, entitled

"Notice of Disability," the contents being indicated by the title, sent one form to the department physician, one to the superintendent of motive power, and one to the superintendent of the relief department. In the meantime White's name had been placed on a roll of members of the relief department and from the pay roll for July there had been deducted from the wages of White by the officer charged with that duty $4.10, being an assessment upon White for all of August and for that portion of July following the 21st. On September 19 the superintendent of the department wrote to the superintendent of motive power as follows:

"CHICAGO, ILL., September 19, 1890.

"*Mr. D. Hawksworth, Supt. Motive Power, Plattsmouth, Neb.*—DEAR SIR: L. T. White, engineman, Plattsmouth, made preliminary application on form 3 July 21 for membership in the fourth class, to take effect July 21, and was taken sick on July 22, as per form 8, No. 15753, issued by J. E. Barwick, before medical examination could be made. Mr. White is not a member of the fund, and the contribution of $4.10 deducted on the July roll should be refunded him at once by time check. Will you please see that this is done, also that the form 8 is canceled.

"Yours truly,     J. C. BARTLETT, *Supt.*"

On the 20th an employe was sent to White's house, where he made a tender of what is designated a "time check." This was on a printed blank, in form a certificate signed by the master mechanic of an amount due for labor for a specified time; but taking this document as it was written it reads as follows:

"BURLINGTON & MISSOURI RIVER RAILROAD COMPANY IN NEBRASKA.

"(C., B. & Q. R. R. Co., OWNER.)

"PLATTSMOUTH, NEB., Sept. 20, 1890.

"L. T. White has worked for this Company Relief Dept. C. R. in month of September.

"Amount due, four dollars & $\frac{10}{100}$ ($4.10).

"D. HAWKSWORTH, *Master Mechanic.*

"S. W. DUTTON."

This was refused by White and his wife. A few hours afterwards White died. No application according to the form prescribed had ever been made by White, and it may be assumed that there had been no physical examination. The defendant in error is White's widow and she brought this action to recover the amount of the death benefit.

A portion of the argument is addressed to the rulings of the court on the admission of evidence. It has been so frequently decided that such rulings will not be reviewed in the absence of specific assignments in the petition in error calling attention to the particular rulings complained of, that it is unnecessary to cite those decisions. There is no assignment in the petition in error herein of the character required to present any of these questions for review. This leaves the case to be determined practically upon a consideration of the instructions given and refused. The court charged the jury quite at length and refused nine of the instructions asked by the defendant below. One so requested was given with modification, but the transcript is in such shape that it is impossible to determine in what the modification consisted, and it is only by the exceptions noted on the margin that we ascertain that there was any modification. Fortunately for the ends of conciseness, the case is presented in such a manner that it becomes unnecessary to review the instructions in detail. The burden of the instructions excepted to was to the effect that if the jury should find that a verbal application for insurance was made, that the deceased was not called upon to make a written application; that he was not called upon to submit to a physical examination; that he had not agreed as a condition to his insurance to submit to such examination; that the relief department had taken from his pay the assessments due from a member and had retained the same,

then that these facts would estop the department from denying his membership and would constitute a waiver of the written application and physical examination. The jury was furthermore instructed that the tender of the time check was not a sufficient tender of a return of the assessment withheld. The effect of the instructions requested and refused was that by the by-laws of the department the assessments were to be made in advance; that the application for membership must be made according to the form prescribed; that a physical examination must take place and thereafter the application must be approved by the department before the applicant should become a member; that the applicant was bound by all the conditions of the constitution and by-laws. Under the evidence in the case the instructions asked by the defendant amounted practically to an instruction to find for the defendant, and the instructions given practically amounted to an instruction to find for the plaintiff. We may, therefore, consider the questions presented generally, without reference to the specific instructions.

We think that upon every principle of equity the court took the correct view of the law. The notice of application was transmitted by the soliciting agent to the superintendent of the relief department, notifying that officer of White's desire to become a member. It was also sent to White's immediate superior as an employe of the railroad company, for what purpose is not so clear, but from the testimony evidently, in part at least, for the purpose of enabling clerks in that department to keep their records upon the basis of White's membership in the department. A third copy was sent to the paymaster evidently for use in connection with the collection or rather withholding of assessments. The department certainly had notice of his application. His name was entered upon a membership roll of the department with a statement that his application took effect July 21, 1890. Upon the subject of as-

sessments the rules are as follows: "Contributions will be due on the first day of the month and will, ordinarily, be deducted from the members' wages from the pay roll of the preceding month." "The contribution for a month or any unexpired part of a month in which an application takes effect shall be made on the pay roll for that month, together with the contribution for the following month." "A member shall not make contribution for any time during which he is entitled to benefits except for the month in which the disability begins." The deduction was made in accordance with these rules from White's pay, contribution for the fraction of July and the whole of August being taken from the July pay roll. The only right which the company could claim for withholding these assessments from the members' pay, and the only right which the department could claim for receiving them, is derived from a clause of the application, which is a part of the by-laws, whereby the company is authorized to withhold such moneys. The application also is required to specify the date when it is to take effect. Another provision of the by-laws is that if the application is approved it shall take effect on the date specified therein. We have here, then, this association, acting through the same officers as the railroad company, or, in other words, the railroad employes acting under authority of the association, receiving notice of White's application for membership and that it was to take effect on July 21. We have them deducting from his pay assessments from July 21, their sole right to do so being by virtue of White's being a member of the department. We have them holding this money until the day before his death, when an effort is made to disclaim his membership and refund his contribution by the tender of a paper which was neither money nor a promise to pay money. In a case unincumbered by the technicalities of the law of insurance there could be little doubt that a party so conducting itself would be estopped from denying lia-

bility.   While the authorities are very numerous in regard
to contracts of mutual insurance and in regard to benefit
associations, but little light is derived from them in the
solution of the questions here presented.   The cases are
nearly all inapplicable, because of the peculiar constitution
of this association.    Most of the mutual benefit associations
perform social functions or are such organizations that the
insurance is only an incident of the membership.   There,
the question as to whether one is or is not a member must
be solved with a view to other objects of the association.
In the case of mutual insurance companies, every payment
is voluntarily made by the member and may be with the
express or implied understanding that its payment is merely
conditional.    Here, while the assessments are termed vol-
untary contributions, they are only voluntary in the sense
that an employe of the railroad may enter the association
or not as he sees fit.   If he elect to enter, he must in so
doing give to his employer and the association the power
to seize the assessments without any further exercise of his
own volition.    White did not voluntarily make a payment
in connection with his application, knowing that the money
might be held for some time and then his application re-
fused; but the department seized his money, and its act in
doing so was wrongful, unless by becoming a member he
had given the department the right to take it.    By its own
acts it subjected him to the obligations of membership, and
it cannot deny him its privileges.

It is urged in argument that White's application had
simply been delayed by reason of his sickness, and inaction
for that reason would not estop the department.   If there
had been merely inaction the case would not be difficult,
but there was very decided action on the part of the de-
partment.    It seized White's money, which it had no right
to do unless he was a member, and retained it until a loss
occurred and for some six weeks after notice of his sick-
ness.   If I give to another authority to take my property

in consideration of certain agreements by him to be performed, and he goes and seizes my property and retains it, it is not difficult to determine that he should not be permitted to disclaim liability upon his agreement.   He cannot receive the fruits of his contract and reject its burdens. We know of no principle of law exempting a mutual insurance company from the operations of such an estoppel.   If there were authority to that effect, we would not recognize it. The doctrine of estoppel is based upon the requirements of morals and conscience, obligations which even mutual insurance companies should recognize.    But it is said that White did not alter his condition in reliance upon the acts of the department and that, therefore, the principle of equitable estoppel does not apply.   We presume that counsel do not think that his parting with a portion of his pay was an alteration of his position.   Generally, the payment of money is sufficient as an act of reliance to render an estoppel operative, and we do not think that the amount of money paid affects the case.   Next it is said that neither the soliciting agent nor different clerks who took part in the transactions had authority to waive compliance with the by-laws of the association.   We need not inquire into the special authority of subordinate employes.   The evidence shows that every material fact was speedily communicated to the superintendent who was charged with the general management of the business and had authority to approve or reject applications.   This is true except as to the entry of White's name upon the roll of members; but this we consider, in the light of the evidence, an immaterial fact, except as such entry may have led to the withholding of White's pay.   The superintendent's power was general; his knowledge was that of the department; his acts were those of the department.   We think, so far, there was a complete case of estoppel made out and the court's instructions were fully warranted.

Much stress is placed upon rule 49 of the department,

whereby it is provided that an employe who has passed a satisfactory medical examination and has made a proper application for membership shall, notwithstanding the delay in examining his application, be entitled to the benefits and subject to the obligation of membership; but shall in the meantime be entitled only to benefits on account of injury or death caused by accident. The objection to applying this rule is that White was not within its provisions. This was not the case of a delay after a proper application and medical examination where the application would bind him by all its terms, but the case of the department treating White as a member, seizing a portion of his pay in a way only authorized under such circumstances, and thereby estopping itself from setting up that there had not been an application and examination and approval on the 21st of July. The department cannot invoke this rule without admitting that there had been both an application and an examination. The facts, indeed, require it to admit this much, but require it to admit more, that is, that the application had been accepted. But little is required to be said as to the effect of the department's attempt to refund the so-called contribution to the defendant before White's death. Perhaps the company recognized such a document as we have above set forth as an instrument for the payment of money. Certainly no one else would so recognize it, and even if money had been tendered it would be extremely doubtful whether a tender made to a man upon his death bed, within a few hours of final dissolution, would amount to a valid tender in any case. Certainly in this case, White's money having long before been taken and the disability having already accrued by which he became entitled to compensation by the department, he was not then required to accept a return of his money in lieu of a discharge of the obligations already incurred by the department.

A section of the rules of the department provides that all questions or controversies of whatsoever character arising

in any manner or between any parties or persons in connection with the relief department or operation thereof, whether as to the construction of language or the meaning of the regulations of the relief department, or as to any right, decision, instruction, or acts in connection therewith, shall be submitted to the determination of the superintendent of the department, whose decision shall be final and conclusive, subject to the right of appeal to the advisory committee. Based upon this rule the defendant requested an instruction that if the jury believed that the superintendent had passed upon this claim and rejected the same, such decision was conclusive unless an appeal had been taken to the advisory committee. This instruction was properly refused. We have no doubt of the power of members of voluntary associations to restrict themselves, at least as to matters incidental to the operation of the association, to remedies before tribunals created by the association. It is only to this extent that the rule seems to apply. It certainly does not apply to this case. In the first place, while the superintendent, immediately after notification of White's death, did write a letter denying White's membership, there was no hearing before him. In so doing he was acting as the executive officer of the association in disclaiming liability, and was not judicially examining and determining a controversy between the association and one of its members. In the next place, we fail to see how the association, while denying White's membership, can invoke the protection of a rule necessarily affecting members alone. Finally, this was not a controversy arising during White's membership. His membership terminated with his death. Mrs. White's rights were then complete. She had no voice in the management of the association, and her interests were adverse thereto. She was not, and could not be, bound by the decision of the officers of the association. This was the view taken in the opinion of Judge Gary in *Railway Conductors Association*

*v. Loomis,* 43 Ill. App., 599.   The supreme court of Illinois reversed Judge Gary's judgment, but upon an entirely different point. (*Railway Conductors Association v. Loomis,* 32 N. E. Rep. [Ill.], 424.

Finally, it is contended that the widow was not the beneficiary and cannot maintain the action.   The application in the by-laws contains the following: "Death benefits shall be payable to —— (here designate the beneficiary or beneficiaries), or to such other person or persons as I shall subsequently designate in writing in substitution thereof, * * * otherwise to my wife."   To this form there is a foot-note as follows: "If no beneficiary is designated, a line will be drawn through the blank space and through the following words beginning 'or such other person or persons' and ending and including the words 'otherwise to.'"   White not having designated a beneficiary, his application, if one had been filed, would read under this by-law "death benefits shall be payable to my wife."   It is clear that the contract of the department is to pay the death benefit, where no beneficiary is named, to the wife of a member, if he have one, and Mrs. White was, therefore, the proper person to maintain the action.

JUDGMENT AFFIRMED.