STATE v. MURRAY.

(Filed September 19, 1905).

*Homicide — Positive and Negative Testimony — Instructions—Recital of Evidence—Error Cured.*

1. Where it was material for the State to show that the prisoner fired the fatal shot, and several witnesses were introduced who swore positively that when the fourth shot was fired the weapon was in the hands of the prisoner, while other witnesses testified that they did not see the pistol, and did not know in whose hands it was when the fourth shot was fired, an instruction that it was the jury's duty to give to positive testimony greater weight than they give to negative testimony, and that the testimony of the former witnesses was what the law terms positive, and that the testimony of the latter was negative, was proper, where the judge followed it up by adding an instruction that left the credibility of the witnesses to the jury.

2. An error in reciting the evidence is cured by the failure of counsel to call it then and there to the attention of the court and have it corrected.

INDICTMENT for murder against W. R. Murray, heard by *Judge R. B. Peebles* and a jury, at the January Criminal Term, 1905, of the Superior Court of DURHAM County. From a verdict and sentence for manslaughter, the prisoner appealed.

*Robert D. Gilmer, Attorney-General,* and *Argo & Shaffer* for the State. ·

*Fuller & Fuller, Manning & Foushee, Boone & Reade, Winston & Bryant* and *J. Crawford Biggs* for the defendant.

CLARK, C. J.   This is an indictment for murder and an appeal from a conviction and sentence for manslaughter.   It was material for the State to show that the prisoner fired the fatal shot, and several witnesses were introduced who swore

positively that when the fourth shot was fired the weapon was in the hands of the prisoner, while other witnesses testified that they did not see the pistol and did not know in whose hands it was when the last or fourth shot was fired. Upon this point His Honor instructed the jury as follows: "The law says that it is your duty to give to positive testimony greater weight than you give to negative testimony. The testimony of those witnesses who swore positively that they saw the pistol in the hand of the prisoner and that he fired the fatal shot while the pistol was in his hand, is what the law terms positive testimony. They swear positively that they saw the existence of a fact. The testimony of the witnesses who said that they saw the prisoner and the deceased in a struggle at the time when the last shot was fired, but they did not see the pistol and did not know in whose hand the pistol was, is what the law terms negative testimony. The reason the law gives greater weight to positive testimony than to negative testimony is because the witnesses who swore to positive testimony swore to what is a fact, an existing fact, or else they deliberately swore to a falsehood, while those who swore to negative testimony may be telling the truth and yet the fact may exist which they did not see. If one witness swears that he saw Sheriff Markham in the court house in Durham on a certain date, the sheriff was there, or else the witness told a lie. Another witness might say, 'I was in the court house on that occasion, but I did not see Sheriff Markham in there;' that witness may be telling the truth and may be conscientious and yet it may be a fact, notwithstanding, that Sheriff Markham was in the court house, and for that reason the law says you must attach greater weight to positive testimony than to negative testimony."

This was excepted to but is consonant with reason and the precedents. In *Henderson v. Crouse,* 52 N. C., 623, the judge below told the jury that "positive testimony was en-

titled to more weight than negative." On appeal this court
said: "The instructions as to the relative weight of positive
and negative testimony is far from error. The rule as laid
down has been long established and followed that there is a
difference and that the positive is entitled to more weight
than the negative is not only an accepted legal maxim, but
is founded, as we think, in truth and justice. The amount
of difference the court did not undertake to decide and could
not as it was a question for the jury. In all cases force of
testimony, whether positive or negative, must depend upon a
variety of collateral facts and circumstances. For instance,
the force of negative testimony must manifestly depend upon
the opportunities of observation afforded to the witness.
These opportunities might be so favorable and frequent as to
approach in weight to a positive statement; yet we take it
when the positive is in conflict with negative under any or-
dinary circumstances, the witnesses being equally credible,
the former should preponderate. Negative testimony as-
suredly might be accumulated from different quarters and un-
der certain circumstances countervail entirely positive testi-
mony, but this is not the question. The question made is
whether it be correct to declare as a naked proposition of law,
stripped of matter that may affect the weight of either, that
positive testimony is entitled to more weight than negative."

This ruling has been cited and approved in *Reeves v.
Poindexter,* 53 N. C., 308; *State v. Horan,* 61 N. C., 575, in
which *Battle, J.,* a most careful judge, says: "Where there is
affirmative and negative testimony it must be left to the jury,
with instructions that the former is entitled to more weight
than the latter;" *Smith v. McIlwaine,* 70 N. C., 289; *State v.
Campbell,* 76 N. C., 263, in which the identical words stated
by *Battle, J., supra,* are again used; *State v. Gardner,* 94 N.
C., 957, and the late case of *Cawfield v. Railroad,* 111 N. C.,
601, where *Avery, J.,* says: "We concur with His Honor in
the opinion that the evidence * * * on the one side was pos-

STATE *v.* MURRAY.

itive and was entitled to greater weight than that adduced by the other.    There was no error in his reading, as he did, from *Henderson v. Crouse,* 52 N. C., 624."

In the present case the judge followed up the above instruction excepted to by adding: "The law says also it is your duty to reconcile an apparent conflict of testimony if you can do it.   If you cannot do it, it is then your duty to march up like men and pass upon the testimony and to say which of the witnesses have told the truth and which have told a falsehood and base your verdict accordingly."

The matter was thus left to the jury, in the last analysis, and the instruction as to the consideration to be given to positive and negative testimony was in accordance with the uniform rulings in this State.   The same rule is laid down in *Stitt v. Huidekoper,* 84 U. S., 395; 3 Rice Cr. Ev., sec. 266, and in a vast mass of cases to the same purport, from nearly all the States as well as Federal Courts collected 20 Cent. Digest pp. 3575-3583.   The precedents are overwhelming and the principle is too well based upon reason to be shaken. It is a reason and principle that any man would act upon in the ordinary affairs of life that when there is positive and negative testimony he will believe and act upon the former when the witnesses are of equal credibility and His Honor left the credibility of the witnesses absolutely to the jury, telling them "to reconcile the evidence if they could; if not, then to find who had told the truth."

The jury came back after some hours' deliberation and informed the court that "some of the jurors seemed to have gotten mixed up as to positive evidence and negative evidence." To this the court replied: "I don't know whether I can give you any instructions on this subject that will make it any plainer.   Positive evidence is where a man swears positively that he saw anything, or anything existed; negative evidence is where a man says 'I did not see anything.'   The defendant introduces a large number of witnesses.   I do not remember

STATE *v.* MURRAY.

how many, 16 I think—and they said they saw a scuffle, and the pistol was in the hands of Joe and Bob Murray; that they do not know who had the pistol when this last shot was fired. Now the court is of opinion that the main question is as to where the pistol was when it was fired the last time, and the court charged you before, and reiterates now, that if the pistol was taken away from Mr. Joe Murray by Mr. Bob Murray, and you find that to be a fact, beyond a reasonable doubt, and he pulled the trigger and fired the shot that killed Joe Murray, then, as the court charged you before, he would be guilty, either of murder in the second degree or manslaughter, according as you find one or the other to have commenced the difficulty; that is, who commenced the fight, not the quarrel, but the fight. If the whole evidence leaves you in a reasonable doubt about who shot the pistol that killed Joe Murray, then it is your duty to give the defendant the benefit of that doubt and say he is not guilty."

The prisoner insisted that the court charged that "The testimony of the State's winesses was positive and the testimony of the defendant's witnesses was negative." This is not done in any part of the charge nor is it a just inference from what was said by the judge. In stating the contentions of the parties he mentions (as was proper) that the "State contends that it had produced nine witnesses who testified positively, as it claims, that the prisoner fired the fatal shot and that they were not contradicted." Also in the instruction above quoted, given on the return of the jury and on their request for further instructions, His Honor said. that the "defendant introduced a large number of witnesses—I don't remember how many, 16, I think—and they said they saw a scuffle * * * that they did not see the pistol when this last shot was fired." But he did not say that all of defendant's witnesses so testified (though in fact each of them did testify that they did not know who fired the last shot), nor does he con-

trast their testimony by saying that the testimony of all the State's witnesses was positive. Hertz, one of prisoner's witnesses, after testifying that he "did not know" who fired the pistol, further said that "he only saw two hands grabbing the pistol, that both had the pistol." Another of defendant's witnesses said in effect the same. This would hardly contradict the judge in a material particular, even if he had said (which he did not) that all of defendant's witnesses testified that they did not know who had the pistol when the last shot was fired, for both these witnesses stated that they did not know who fired the last shot, which was the material point, and not whether one or both men had hold of it. But if it were conceded that there was a material inadvertence, it was certainly not an error of law, but an inadvertent error in reciting the evidence, which was cured by the failure of the counsel to call it then and there to the attention of the court and have it corrected. *State v. Grady,* 83 N. C., 646 (indictment for murder), in which *Smith, C. J.,* says: "It was the duty of counsel, if evidence important to the defense had been overlooked, then to call it to the attention of the judge and have the omission supplied. It would be neither just to him nor conducive to a fair trial to allow this neglect or oversight, attributable to counsel quite as much as to the judge,  to be assigned for error entitling the accused to another trial, whatever force it might have in influencing the court in the exercise of an unreviewable discretion to grant it." This has been approved in *State v. Reynolds,* 87 N. C., 546; *State v. Gould,* 90 N. C., 662; *State v. Debnam,* 98 N. C., 717; *Cathey v. Shoemaker,* 119 N. C., 427.

It would be detrimental to the administration of justice if a serious trial, occupying probably many days, and conducted at great expense, should be gone over again for a slight inadvertence of the judge in stating the evidence, when counsel could at once have had the error (if prejudicial) corrected upon the spot by calling the matter to the attention

of the court. The prisoner was not *inops consilii,* but was represented by nine of the ablest lawyers at one of the ablest bars in the State. If the recital of the evidence in this particular was erroneous and prejudicial, they would surely have noticed it and asked its correction. Such request for correction of the statement should have been asked for then when it could have been easily made and not in this court on appeal.

Besides His Honor told the jury that if their recollection differed from the evidence read over to them or as detailed by counsel, that "the jury are the sole judges of what the witnesses said and the sole judges of how much faith and credit should be put in the testimony of each and every witness who was examined before you."

The court also charged the jury at the request of the prisoner: "The State must satisfy the jury beyond a reasonable doubt that the prisoner fired the shot which inflicted the wound upon J. S. Murray from which he died. If the jury, *considering all the testimony,* are left in doubt whether the prisoner fired the fatal shot which killed J. S. Murray, the prisoner is entitled to the benefit of that doubt and the jury will render a verdict of not guilty."

No Error.