CLARK, C. J., concurring in result.
This is an action to recover benefits, which the plaintiff alleges he is entitled to under the rules and regulations of the relief department of the defendant.
The plaintiff, an employee of defendant, became a member of the relief department on 28 June, 1902, and paid his dues, amounting to $6.15, up to 6 September, 1902, when he was accidentally injured.
After his injury he was paid, as benefits on account of his disability to work, $1 per day for twelve months, and thereafter 50 cents per day up to 15 May, 1905, making a total of $673.50.
On or about the last day, the superintendent of the department decided that the plaintiff was able to return to work, and he was notified to do so, but he refused, contending that he was still unable to work.
The plaintiff appealed from the decision of the superintendent to the advisory committee, and employed counsel to represent him. He was given a hearing by the committee, and this tribunal held that he was no longer under disability.
He then began this action, and the defendant pleads, as a defense, the rules and regulations of the department and the decision (196) of the advisory committee.
There is no evidence of fraud and no claim that the injury to the plaintiff was due to negligence. The regulations of the department are fully stated in Barden v. R. R., 152 N.C. 318, and in King v. R. R.,ante, 44, and it is not necessary to do more than quote the part particularly relied on, which is as follows:
"65. All claims of members, or of their beneficiaries or other representatives, for benefits, and all questions or controversies of whatsoever character, arising in any manner or between any parties or persons, in connection with the relief department or the operation thereof, whether as to the construction of language or the meaning of the regulations or acts in connection with the operation of the department, shall be submitted to the determination of the superintendent, whose decision shall be final and conclusive thereof, unless a written appeal from his decision is made to the committee.
"If the party or parties so submitting any matter to the superintendent shall be dissatisfied with his decision, such party or parties shall appeal *Page 158 
to the committee within thirty days after notice to the parties interested of the decision of the superintendent.
"When an appeal is taken to the committee, it shall be heard by said committee without further notice at their next stated meeting, or at such future meeting or time as they may designate, and shall be determined by vote of the majority of a quorum, or of any other number not less than a quorum of the members present at such meeting, and the decision arrived at thereon by the committee shall be final and conclusive upon all parties without exception or approval."
There was evidence on the part of the plaintiff that he was unable to work on 15 May, 1905, and that this disability continued up to the time of the trial, and evidence to the contrary by the defendant.
The defendant requested the following special instruction, which was refused, and defendant excepted:
"That if you believe the evidence in the case, the plaintiff (197) was at the time of the alleged injury a member of the relief department of the Atlantic Coast Line Company, and agreed to be bound by the rules and regulations of said relief department, and accepted benefits therefrom in accordance with the said rules and regulations, and that there is no evidence of any fraud or deceit of any character practiced upon the plaintiff, either in signing the application for membership in said relief department or in inducing him to accept the benefits in said department after his said injury; and that the plaintiff voluntarily accepted benefits and elected thereby to obtain his rights under said contract in accordance with the rules and regulations of said relief department; and the court, therefore, charges you that as the plaintiff has submitted the questions in controversy in this action to the tribunal provided for in the rules and regulations of said relief department, of which he was a member, and the same having been duly and orderly considered by said advisory committee of said relief department, the plaintiff under the terms of his contract, as a matter of law, is bound thereby, and he cannot maintain this action, no fraud or undue influence having been proven, you will answer the issue as to the right of recovery by plaintiff in this action `No.'"
There was a verdict and judgment in favor of the plaintiff, and defendant excepted and appealed.
After stating the case: The question involved in this case is of general importance, and the principle announced will determine, in this State, the right of all benefit societies and fraternal orders, which *Page 159 
provide for the payment of benefits to sick or disabled members, to establish, within the society or order, some tribunal with power to investigate the fact upon which the right to the benefit may depend, and whose decision shall be final, unless impeached for fraud.
We cannot declare that the decision of such a tribunal is binding upon a member who belongs to a fraternal order, and refuse to enforce it, on substantially the same facts, because it is invoked in behalf of the relief department of a railroad.
The principal contentions of the plaintiff, assailing the validity of the decision of the advisory committee, are that it is (198) practically an arbitration; that on the facts developed a property right is involved; that an agreement to submit such a right to arbitration in advance of the controversy is invalid, because it is an agreement which ousts the courts of their jurisdiction, and that the advisory committee was not fairly constituted.
The defendant replies that if the action of the advisory committee is to be governed by the strict rules of an arbitration, no property right was submitted to the committee, but only the ascertainment of a single fact, that the committee was impartially constituted; and if not, that the plaintiff submitted his claim with full knowledge of the facts, and that there has been an award, which is final.
The defendant further says that the principles relied on are not applied, without qualification, in behalf of a member of an organization, who acquires his property right under and by virtue of its regulations.
There is some difference of opinion as to the motive behind the adoption of the rule that an agreement in advance of a controversy to submit all questions of law and fact to arbitration is not enforcible, some attributing it to the jealousy of the courts and a desire to repress all attempts to encroach on the exclusiveness of their jurisdiction, and others to an aversion, from reasons of public policy, to sanction contracts by which the protection which the law affords the individual citizen is renounced (Canal Co. v. Coal Co., 50 N.Y. 258), but the tendency of the later decisions is to relax the rule.
In the case from New York, the Court says:
"An agreement of this character induced by fraud, or overreaching, or entered into unadvisedly through ignorance, folly, or undue pressure, might well be refused a specific performance, or disregarded when set up as a defense to an action. But when the parties stand on an equal footing, and intelligently and deliberately, in making their executory contracts, provide for an amicable adjustment of any difference that may arise, either by arbitration or otherwise, it is not easy to assign, at this day, any good reason why the contract should not stand, and the parties made to abide by it and the judgment of the tribunal of their *Page 160 
(199) choice. Were the question res nova, I apprehend that a party would not now be permitted, in the absence of fraud or some peculiar circumstances entitling him to relief, to repudiate his agreement to submit to arbitration and seek a remedy at law, when his adversary had not refused to arbitrate, or in any way obstructed or hindered the arbitration agreed upon. . . . The better way, doubtless, is to give effect to contracts, when lawful in themselves, according to their terms and the intent of the parties, and any departure from this principle is an anomaly in the law, not to be extended or applied to new cases unless they come within the letter and spirit of the decisions already made. The tendency of the more recent decisions is to narrow rather than enlarge the operation and effect of prior decisions, limiting the power of contracting parties to provide a tribunal for the adjustment of possible differences without a resort to courts of law; and the rule is essentially modified and qualified."
This is in line with the statement of Chapman, J., in Hood v. Hartshorn,100 Mass. 117, that "judicial tribunals are provided by the Government to enable parties to enforce their rights when other means fail, but not to hinder them from adjusting their differences themselves, or by agents of their own selection," and with the remark of Pollock, B., in Dawson v.Fitzgerald, 1 Ex. D., 257, that "it has been shown, not only by decisions, but the legislation of late years, that the same pious reverence is not felt for litigation in an open court that was felt in the olden time."
There would appear to be some contradiction for the same Court to say that "The settlement of controversies by arbitration is looked on with great favor by the courts" (Hurdle v. Stallings, 109 N.C. 6), and then refuse to permit the members of an organization to agree upon a plan for determining when a member is able to return to his work.
The rule as to agreements to arbitrate has been modified from time to time until now it is generally accepted that it is competent to contract that the amount of damages which may be recovered, or the existence of any fact which may enter into the right to recover, shall be (200) submitted to arbitration, provided the right of action is not embraced in the agreement.
In the leading English case of Scott v. Avery, 5 H. L., 811, it was held that a provision of a mutual insurance company was valid, "that the sum to be paid to any insurer for loss should, in the first instance, be ascertained by the committee; but if a difference should arise between the insurer and the committee, `relative to the settling of any loss, or to a claim for average, or any other matter relating to the insurance,' the difference was to be referred to arbitration," and Lord Coleridge *Page 161 
thus speaking of this provision: "The principle of law which is relied on by the plaintiff in error is agreed on. The difference between the parties is upon the question whether it governs the present case, and this must be decided by determining the true construction of the agreement. If two parties enter into a contract, for the breach of which in any particular an action lies, they cannot make it a binding term that in such event no action shall be maintainable, but that the only remedy shall be by reference to arbitration. Whether this rests on a satisfactory principle or not may well be questioned; but it has been so long settled that it cannot be disturbed. The courts will not enforce or sanction an agreement which deprives the subject of that recourse to their jurisdiction, which has been considered a right inalienable, even by the concurrent will of the parties. But nothing prevents parties from ascertaining and constituting as they please the cause of action which is to become the subject-matter of decision by the courts."
Again, it is said in Assurance Co. v. Hall, 112 Ala. 323: "The principle is that when the agreement to arbitrate includes the whole subject-matter of difference, so that the right of the party to resort to the courts of his country for the determination of his suit or claim is absolutely and effectually waived, such an agreement is against public policy and void. We adhere to that conclusion. The courts clearly distinguish between an agreement which refers to arbitration the extent or amount of damages to be recovered, but leaves the parties free to have the right to recover or liability of the other party determined by the courts, and those agreements which refer to arbitration the authority to determine the right of the one to recover or the liability of the (201) other. The former are upheld and enforced, while the latter are declared to be against public policy and not binding."
In Holmes v. Rickett, 56 Cal. 313, the case from New York (Canal Co. v.Coal Co., supra) and Scott v. Avery, supra, are cited with approval, and particularly the statement in the latter case: "But nothing prevents parties from ascertaining and constituting as they please the cause of action which is to become the subject-matter of decision by the courts."
The original doctrine, with its modifications, is well summed up byJustice Manning in Kelly v. Trimont Lodge, 154 N.C. 100: "Our Court has uniformly held to the doctrine that when a cause of action has arisen, the courts cannot be ousted of their jurisdiction by agreements, previously entered into, to submit the liabilities and rights of the parties to the determination of other tribunals named in the agreement; but it has been also generally held that the agreement to submit the particular question of the amount of loss or damage of the assured *Page 162 
under an insurance policy is not against public policy and is sustained. That is simply a method for the ascertainment of a single fact, and not the determination of the legal liability of the insurer," citing Mfg. Co. v.Assur. Co., 106 N.C. 28; and in Brady v. Ins. Co., 115 N.C. 354,Justice Avery says the proposition is well settled that an agreement to submit to arbitration the single question of the amount of loss by fire is valid.
Under these authorities, and particularly under the declaration of our own Court, and treating the agreement as one for arbitration, pure and simple, the defendant might well contend that its liability to pay benefits being admitted, when the plaintiff is under disability, that it was competent for the parties to agree in advance that the single fact of disability should be determined by arbitration.
But the case is stronger for the defendant than this, as the plaintiff has voluntarily submitted his claim to the arbitrament of the advisory committee, and an award has been rendered against him.
The authorities seem to agree that although an agreement to (202) arbitrate the entire controversy is not enforcible, and that prior to the award either party may revoke the agreement, that if he fails to do so, and enters upon the arbitration, and an award is made, he is bound.
In Tobey v. Bristol, 23 Fed. Cases, 1321, Judge Story, after discussing the power of revocation, says: "But where an award has been made before the revocation, it will be held obligatory, and the parties will not be allowed to revoke it, and the courts of law, as well as of equity, will enforce it."
The same principle is declared by Justice Walker at the last term, inWilliams v. Mfg. Co., 154 N.C. 208, in which he says: "After the arbitrators have acted and rendered an award, the case is very different. Their decision (that of the arbitrators) is binding upon the parties, and can be successfully impeached only upon the grounds which would invalidate any other judgment. This distinction between a mere agreement to submit and a submission consummated by an award is uniformly recognized by the authorities."
Nor can the plaintiff now object that the members of the advisory committee were interested, or partial, if such is the fact, because he knew how it was constituted when he became a member of the department, and at the time he submitted his claim to them.
As was said by Justice Shepherd in Pearson v. Barringer, 109 N.C. 398: "It is well settled that parties `knowing the facts may submit their difference to any person, whether he is interested in the matters involved (Navigation Co. v. Fenton, 4 W. S. (Pa.), 205), or is related to one of the parties; and the award will be binding upon them.' (6 Wait's *Page 163 
Act. and Def., 519; Morse or Arbitration, 105.) But if the submission is made in ignorance of such incompetency, the award may be avoided. No relief, however, will be granted unless objection is made as soon as the aggrieved party becomes aware of the facts; and if after the submission he acquires such knowledge and permits the award to be made without objection, it is treated as a waiver, and the award will not be disturbed.Davis v. Forshee, 34 Ala. 107. `A party,' says Morse on Arbitration(supra), `will not be allowed to lie by after he has attained the knowledge and proceed with the hearing without objection, thereby accumulating expense and taking the chance of a decision in his (203) favor, and then, at a later stage, or after a decision has been or seems likely to be rendered against him, for the first time produce and urge his objection.' From these and other authorities it would seem clear that when one seeks to impeach an award he must show that he made objection as soon as he discovered the disqualifying facts."
If, therefore, we applied the rules governing arbitration and awards, we would hold upon the facts in this record that it was competent for the parties to agree in advance to submit to arbitration the single question of the ability of the plaintiff to return to his work, and that an award rendered on such an agreement would be valid, when free from oppression or fraud.
The rights of the parties cannot, however, be determined strictly upon the principle governing arbitrations, because the plaintiff acquires his right to the benefits he claims under the rules of the relief department, and he has by contract attached to the enjoyment of these benefits the condition that he will abide by all reasonable regulations.
There is no question of negligence involved, and the plaintiff does not say that the provisions of the relief department are against public policy and void. On the contrary, he demands relief because he is a member of the department and under its provisions. He says that, having contributed dues amounting to $6.15 before he was accidentally injured, and having received benefits amounting to $673.50 on account of his injuries, that when the department, upon an appeal by him, in accordance with the by-laws, decides that he is able to return to work, he may refuse to do so, and that the regulations providing for a tribunal to decide this single question have no binding force.
The authorities upon this question are in much conflict. All seem to agree that when the regulation of an organization relates to its internal policy, or to a question of membership, that the action of the organization, according to the regulations, is, in the absence of fraud, conclusive; but there is a difference of opinion as to what is a property right and as to the effect of the regulation when a property right is involved. *Page 164 
Some courts hold that when a property right is involved, the (204) member must first seek redress inside of the order, and that, having done so, he may then resort to the courts. Others hold that if there is no inhibition against resorting to the courts, he may do so in the first instance. Others, that he must resort to the order first, if the regulations so require, and then to the courts, although the regulations say that the decision by the tribunal in the order shall be final. And others, that the decision rendered according to the regulations of the order is final and conclusive. Vandyke's case, 3 Whar. (Pa.), 312;Barker v. Great Hive, 135 Mich. 400; Van Poucke v. St. Vincent,63 Mich. 381; Ry. Ben. Assn. v. Robinson, 147 Ill. 159; Cotter v.A. O. U. W., 23 Mont. 90; Loeffler v. M. W., 100 Wis. 85; Rood v.Ben. Assn., 31 Fed., 62 Osceola Tribe v. Schmidt, 57 Md. 105; AnacostaTribe v. Murbach, 13 Md. 91; Sanderson v. Railroad Trainmen, 204 Pa. St., 183; Robinson v. Templar Lodge, 117 Cal. 371; Lodgev. Grogan, 44 Ill. 111; Knights of Pythias v. Wilson, 66 Fed., 785.
In Vandyke's case the charter of a private corporation provided that if any member should be found breaking the rules of the society he should be served with a notice to attend to answer at the next stated meeting, after which a decision should be made by ballot, and if two-thirds considered him guilty, he should be dealt with agreeably to the by-laws. The by-laws provided that no member should be entitled to receive any benefit from the society whose complaints are the result of intoxication, etc. A member having been expelled by the requisite majority, on the ground of intoxication, after due notice, etc., he brought an action in the court of common pleas to recover the allowance granted to disabled members, and it was held that the regularity of the proceedings to expel him could not be inquired into in that action, and that the court had no jurisdiction to compel payment of the allowance.
Chief Justice Gibson, who wrote the opinion, says: "Into the regularity of these proceedings it is not permitted us to look. The sentence of the society, acting in a judicial capacity and with undoubted jurisdiction of the subject-matter, is not to be questioned collaterally, while it remains unreversed by superior authority."
It will be noted that in this case the tribunal provided in the (205) order decided the question of intoxication; and its decision was held to be conclusive, and upon it the right to benefits was denied.
In Sanderson v. Brotherhood of Trainmen, supra, speaking to the same question, the Court says: "In the case at bar the plaintiff's statement clearly shows that the constitution of the order provides a tribunal *Page 165 
to decide the very question now in controversy in this case, to wit, whether or not the plaintiff's claim amounted to total disability. In accepting the certificate the plaintiff agreed, with the other members of the beneficial order, that he would submit this question to the tribunal so constituted. It was a tribunal of his own choice. It was doubtless provided for the express purpose of preventing litigation, and thereby to prevent the funds of the order from being taken and used in defending suits. It is to the interest of every member of the order that this regulation should be enforced. In our opinion, the decision of such tribunal is conclusive upon the plaintiff, and the merits of the decision of such tribunal cannot be inquired into collaterally, either by action at law or any other mode."
In Anacosta Tribe of Red Men, supra, the right of a member to sick benefits was involved, and after a decision against him in the order, he brought action to recover the benefits. The Court says: "The appellee, by becoming a member, assented to be governed by the Tribe and Council, according to the regulations, and it follows that he was bound by their application and construction in his own case. It is provided that the Tribe shall determine matters of this kind, and the decision, on appeal, made final. These are private beneficial institutions operating on the members only, who for reasons of policy and convenience, affecting their welfare and perhaps their existence, adopt laws for their government, to be administered by themselves, to which every person who joins them assents. They require the surrender of no right that a man may not waive, and are obligatory on him only as long as he chooses to recognize their authority. In the present instance the party appears to have been subjected to the general laws and by-laws according to the usual course, and if the tribunal of his own choice has decided against him, he ought not to complain. It would very much (206) impair the usefulness of such institutions if they are to be harassed by petty suits of this kind; and this, probably, was a controlling consideration in determining the manner of assessing benefits and passing upon the conduct of members. The very point arose in Vandyke's case, 2 Whar., 309, where (Gibson, Ch. J., delivering the opinion of the Court) it was held that an action did not lie to recover benefits, upon grounds that we deem altogether satisfactory."
This and Vandyke's case were approved in Osceola Tribe v. Schmidt,57 Md. 105.
In Van Poucke v. St. Vincent Society, supra, plaintiff sued the defendant, a mutual benefit and cooperative insurance company of which he was a member, for money claimed to be due him for a "sick benefit." The by-laws of the company provided for a "sick committee," whose duty it should be to investigate and determine whether a member was *Page 166 
entitled to such benefit, whose decision was to be final, and the committee to be sole "deciders" of the question. After plaintiff had received assistance for a time, he was cited before the committee, and after a hearing they decided that he was not entitled to receive any further
benefits on account of his injury, of which decision he was duly notified, and it was held that the action of the committee was final, the Court saying: "It is necessary that there should be some mode of determining the question of when relief should be given and denied, and the method provided in the by-law seems well adapted to the circumstances and needs of such society. There is nothing oppressive in the terms of the by-law, and it contains nothing which the policy of the law forbids. If it is enforced in good faith and with impartiality, which the members pledge themselves to do, it must result in benefit to sick members, and at the same time protect the funds of the society from depletion by the undeserving."
The same principle is declared in Barker v. Great Hive, 135 Mich. 502.
The question was considered by the Circuit Court of Appeals in Knightsof Pythias v. Wilson, supra, and it was there declared: "The decided weight of authority is that a member of a mutual benefit society must resort, for the correction of an alleged wrong done to him as such member, to the tribunals of the society, and when the proceedings are regular, the action of the society is conclusive, and cannot be inquired into collaterally."
We will not quote further from the cases cited, and there are others to the same effect, but they sustain fully the contention of the defendant, that it was the duty of the plaintiff to seek redress inside the department, and that the decision of the advisory committee, upon his appeal, is conclusive upon him.
The doctrine seems to us to be reasonable and just, and necessary to the maintenance, in benefit societies and fraternal orders, of provisions conferring benefits on sick or disabled members.
If it should be held otherwise, such societies would be subjected to litigation each time a member was dissatisfied, and funds raised for wise and beneficent purposes would be wasted.
This is not in conflict with the opinion in Kelly v. Trimont Lodge,154 N.C. 98. In that case it is stated that the plaintiffs were entitled, under the rules and regulations, to the sum demanded, and the defendant denied the right of action. It was held that an agreement to submit the whole controversy to arbitration was not binding; but it is distinctly stated that it was competent to agree that the decision of a single fact, such as we have here, could be submitted to a tribunal within the order.
When a member submits his claim to the committee he is entitled to *Page 167 
a hearing, and is not concluded by its action if it is fraudulent or oppressive, of which the facts on this record furnish no evidence.
There was error in refusing to give the instruction requested by the defendant, and a new trial is ordered.
New trial.