STACY, C. J., dissenting.
This is an action brought by plaintiff against the defendant to recover the sum of $650.00, on account of monthly payments due from 1 April, 1933, to 1 May, 1934, under Beneficiary certificate No. A-316839 of the series of 1907, issued by defendant to plaintiff on 12 June, 1922. The disability benefit for which recovery is sought in this action is set forth in the Constitution of the Brotherhood of Locomotive Firemen and Enginemen (in effect on and after 1 January, 1932), sec. 23 (a), page 94: "In this Constitution of the Brotherhood of Locomotive Firemen and Enginemen, total and permanent disability shall be construed to *Page 634 
mean such a state of bodily incapacity as shall wholly and permanently prevent a member from engaging in any occupation, profession, or business, or from performing or directing any work for remuneration or profit, but shall not include claims resulting solely from old age."
The plaintiff was 49 years of age. He was working on the railroad, running a switch-engine, and joined the defendant organization in 1915 or 1916. He is still a member and pays defendant $4.50 a month. Since December, 1927, the plaintiff, from the Relief Department, has been paid $75.00 a month for disability. On 30 September, 1931, he was a member in good standing of the Relief Department, and received notice that payment for disability was going to be discontinued. (Letter of A. Phillips, General Secretary and Treasurer, 15 September, 1931.) On 19 November, 1931, he agreed with defendant to become a member of its Disability Benefit Department and release his rights to the Relief Department, and the defendant paid plaintiff $50.00 a month under the new arrangement until March, 1933, when plaintiff was cut off.
There is in Asheville, N.C. a local lodge of defendant, known as the Blue Ridge Lodge, No. 455. Plaintiff joined this lodge in Asheville and is in good standing. There are about 100 members in the lodge. The money is all collected in Asheville. When plaintiff was cut off on 20 May, 1933, he filed an application on blanks (as did the doctors) furnished by defendant "to the members of Lodge 455," stating, "I am totally and permanently disabled from engaging in any occupation, profession, or business, or from performing or directing any work for remuneration or profit on account of asthma and chronic bronchitis. . . . My last occupation or employment of any kind was engineer. . . . Q. Are you now totally disabled? Yes. Have you performed work of any nature for remuneration or profit since this disability was incurred? No."
The affidavit of Dr. D. R. Bryson, attending physician, states in part: "I have carefully and thoroughly examined Robert Cordell, age 46, a member of Lodge 455 of the Brotherhood of Locomotive Firemen and Enginemen, and find as follows: Date and place of examination: 5/18/33, Bryson City, N.C. How long have you been his attending physician? At times for 5 years. . . . Date and cause of injury or onset of present illness — followed influenza in 1925. Date on which he was obliged by reason of injury or illness to give up all work — 1927. What improvement, if any, has occurred since you first attended him? None. `Total and permanent disability shall be construed to mean such a state of bodily incapacity as shall wholly and permanently prevent a member from engaging in any occupation, profession, or business, or from performing or directing any work for remuneration or profit, but shall not include claims resulting solely from old age.' In your opinion, *Page 635 
is he totally and permanently disabled as above defined? Yes. Do you believe he is able to engage in any of the duties of his usual occupation? No. Do you believe he is able to engage in any occupation for at least part time? (Please explain fully.) Nothing in way of actual labor. If not, when, in your opinion, will he be able to do so? Indefinite."
Report of Dr. A. C. Ambler, examining physician: "Date and place of examination, Asheville, N.C. 15 June, 1933. Give below, under Remarks, a complete statement of your examination, with an accurate description of this claimant's condition as you found it upon examination, giving all the evidence, physical signs, available X-ray or laboratory findings, of illness or injury. Diagnosis? Bronchial asthma and bronchiectous. Are you able from this examination to confirm this diagnosis? If not, please explain? Yes. Do you believe he is able to engage in any of the duties of his usual occupation? No. Do you believe he is now able to engage in anywork, either manual, clerical, sedentary, or directive nature, for at least part time? No. Please explain fully. Patient extremely short of breath and weak, slightly cyaustic, coughing and expectorating continuously. Expectoration muco purulent. When, in your opinion, did total disability begin? 1928. When, in your opinion, did total disability cease? Still disabled. If now totally disabled as defined above, please estimate the length of future total disability? Probably permanent. In your opinion, is he totally and permanently disabled as defined in above law? Yes. (This is set forth and is quoted before — Const., sec. 23 (a), p. 94, supra)."
On this application of plaintiff, accompanied by the affidavits of the physicians, the local lodge made its report: "Report of the Local Lodge — To the General Secretary and Treasurer — We beg to inform you that at a regular meeting of Lodge No. 455, held 23 May, Asheville, N.C. the above application for disability benefit allowance of Brother Robert Cordell, of Lodge No. 455, was duly considered and approved. President O. H. Bradshaw, Acting Recording Secretary. T. J. Ledwell, Rec. Sec. (Lodge Seal.) (Application will not be approved by a local lodge unless sworn statements from the applicant and examining physician are completed.)"
On 18 January, 1934, the International President disallowed the claim, and plaintiff appealed to the Board of Directors, who set a time for hearing. The plaintiff sent certificate from Dr. P. R. Bennett that he was unable to travel, and also in the record is a certificate as follows: "To the Brotherhood of Locomotive Firemen and Enginemen, Cleveland, Ohio. This is to certify that I have examined and treated Bob Cordell, and find him suffering from chronic bronchial asthma in a severe form and also from intercostal neuritis, and I further certify that he is totally disabled, and it is my opinion he always will be. Yours respectfully, (Signed) P. R. Bennett, M. D." *Page 636 
C. V. McLaughlin, Acting General Secretary and Treasurer for defendant, wrote a letter to plaintiff directing him to present himself to Dr. Ambler for examination, which he did.
On 19 February, 1934, the Board of Directors, on appeal, disallowed the claim of plaintiff. Dr. T. W. Folsom, an expert, testified in part: "I first treated him in 1931, soon after I came here. He is my patient now and has been continuously since 1931; however, he has seen other doctors in the meantime. It is rather difficult to say how frequently during that time I have treated Mr. Cordell; often here I would treat him for a week or two at a time, and then maybe he would go a week or so without treatment. It went along about that rate until now. At the present time he is residing in Asheville. I reside at Swannanoa; I have been called from Swannanoa to see Mr. Cordell since he has been in Asheville. I think the plaintiff is permanently and totally disabled; that is my opinion; in my opinion, he has been in that condition for three and a half years, that is as long as I have known him; I couldn't say beyond that. When I first examined him I found several conditions there, intermedial emplyseum, dilitation of the lung cells themselves; bronchitis, bronchial asthma, paroxysms, and chronic fibroid tuberculosis."
G. N. Denton, for 16 years a member of Blue Ridge Lodge, No. 455, and Financial Secretary, testified in part: "The plaintiff is now paying his dues of $4.50 to the defendant. On 30 September, 1931, the plaintiff in this action was then a member and in good standing with the defendant. I have known the plaintiff in this action, Mr. Cordell, about 20 years, I guess. He at one time worked for some railroad company; I know that. Since 1927, and on up to the present time, I saw Mr. Cordell very often, I couldn't tell, but every month, anyway. I have observed his physical condition; he has been a very sick man. He has been sick for the last 10 or 12 years to my knowledge; and I, as an officer of the defendant, knew that."
Dr. Charles Hartwell Cocke, an expert, testified in part: "I have seen him within the last three months. As I have not examined him for the last six weeks, I would not want to make any categorical statement, but from my knowledge and observation of him, I would feel that he is still totally incapacitated from gainful occupation. When I examined him within the last 3 months, I think he was then totally incapacitated from gainful occupation; that is my opinion; that he was at that time. I would say that my opinion is, from the nature of the disabilities that I have observed in Mr. Cordell, that he has been continuously disabled and totally disabled from gainful occupation since I first knew him, in December, 1927; because of the presence of advanced bilateral fibroid tuberculosis, with extensive emphysema and asthmatoid attacks resulting *Page 637 
from the above, and from the numerous instances in which I have had to attend him for pulmonary hemorrhages resulting from the above disease."
Mrs. Robert Cordell testified: "Mr. Cordell and I have been married 22 years, I believe. For the last seven years, Mr. Cordell hasn't been able to work, what you say to work regularly, for a long time, I couldn't say just how long; he has helped me what he could in the little business I would try to run; he would help at times and other times he couldn't help. I have seen him have hemorrhages of the lungs; in October and November, 1934, very bad, he had several. He bled and spit up blood, more than he does right now, but he does some now, but in those two months it was right bad. I should say he does cough. It is very difficult for him to breathe. He doesn't sleep much, he doesn't have much rest. I have observed that condition for some several years. During all this period of time I have described to the jury, he spends a good deal of his time in bed."
The defendant had Dr. Edward W. Schoenheit to examine plaintiff. The physician said: "I don't know whether I can give an exact answer as to what I found Mr. Cordell was suffering from in October and November, 1933; but I was asked to try to find a diagnosis at that time, whether or not he was suffering from active tuberculosis; whether or not tuberculosis was the cause of his present disability, or whether it was bronchietasis or bronchial asthma. My findings were that he had an old healed — healed, so far as I could determine by examination at that time — at least inactive — pulmonary tuberculosis. He has profuse cough and expectoration, which I thought might be due to the bronchietasis. The X-ray did not reveal any evidence of this. Due to the fact that he had those asthmatic attacks, I felt that the cause of the trouble at that time was bronchial asthma. In my own opinion, I did not find any evidence of activity at that time."
In a letter from the same physician on 21 November, 1933, he states, in regard to plaintiff: "He has numerous rales and squeaks throughout his chest and is somewhat short of breath; he also has asthmatic attacks. I saw him in one of these and administered adrenalin hypodermically."
On cross-examination, Dr. Folsom testified in part: "I know about him being elected justice of the peace out here. I have an opinion about whether or not he could sit in his office and take affidavits and handle matters which a justice of the peace ordinarily handles; my opinion is that his physical and mental condition would not permit it. . . . I know that on account of the plaintiff's physical condition he couldn't hold the office of justice of the peace, and resigned."
The plaintiff alleged in his complaint: That defendant has arbitrarily, unreasonably, and unlawfully and fraudulently refused to pay plaintiff *Page 638 
the aforesaid sum of $50.00 per month, and has arbitrarily, unreasonably, wrongfully, and unlawfully refused to carry out and perform the terms of the aforesaid contract and the terms and conditions of said Constitution in effect 1 January, 1932, and plaintiff's said Beneficiary Certificate. That plaintiff has exhausted all remedies he has by appeal provided by the laws of the defendant Brotherhood of Locomotive Firemen and Enginemen, and has given the General Secretary and Treasurer of defendant thirty (30) days' notice in writing of his intention to bring this action.
The issues submitted to the jury and their answers thereto were as follows:
"(1) Did the defendant unreasonably, arbitrarily, and in want of good faith, reject plaintiff's claim for a monthly compensation on account of alleged permanent and total disability? Answer: `Yes.'
"(2) Is the plaintiff totally and permanently disabled? Answer: `Yes.'
"(3) Is the plaintiff entitled to receive from the defendant $50.00 per month on account of said total and permanent disability, as alleged? Answer: `Yes.'
"(4) In what amount, if any, is the defendant indebted to the plaintiff? Answer: `$650.00.'"
The court below rendered judgment on the verdict. The defendant made numerous exceptions and assignments of error, and appealed to the Supreme Court. The material ones and other necessary facts will be considered in the opinion.
At the close of plaintiff's evidence and at the close of all the evidence the defendant in the court below made motions for judgment as in case of nonsuit. C. S., 567. The court below overruled these motions, and in this we can see no error.
In 51 R. C. L., at p. 1421 — II. General Rules, is the following: "There is a decided conflict of authority on the question of the validity of provisions of the constitution, by-laws, or contracts of a mutual benefit association undertaking to make conclusive decisions of its tribunals or officers directly upon claims for benefits. What seems, however, to be the weight of authority holds that such provisions are contrary to public policy and void, and so will not preclude either the member, in case of a claim for disability or sick benefits, or his beneficiary or representative, in case of a claim for death benefits, from resort to the civil courts, if by its contract the association assumes an absolute legal *Page 639 
obligation to pay the benefits in a certain event, and does not merely engage to pay such benefits as may be awarded by its officers or tribunals." The N.C. case of Kelly v. Trimont, 154 N.C. 97, is cited.
In 51 A.L.R., supra, at p. 1436, we find: "In Kelly v. Trimont Lodge
(1910), 154 N.C. 97, 52 L.R.A. (N.S.), 823, 69 S.E. 764, it was said: `Our Court has uniformly held to the doctrine that, when a cause of action has arisen, the courts cannot be ousted of their jurisdiction by agreements, previously entered into, to submit the liabilities and rights of the parties to the determination of other tribunals named in the agreement; but it has been also generally held that the agreement to submit the particular question of the amount of loss or damage to the assured under an insurance policy is not against public policy, and is sustained. That is simply a method for the ascertainment of a single fact, and not the determination of the legal liability of the insurer.' And stating it to be the rule now, with reference to agreements to arbitrate, that it is competent for such societies to contract that the amount of damages which may be recovered, or the existence of any fact which may enter into the right to recover, shall be submitted to arbitration, provided the right is not embraced in the agreement, the Court, in Nelson v. Atlantic Coast LineR. Co. (1911), 157 N.C. 194, 52 L.R.A. (N.S.), 829, 72 S.E. 998, held that a railway relief department may make the determination of its own tribunals conclusive as to the duration of the time in which a member is entitled to benefits, distinguishing the case from the Kelly case (N.C.),supra, upon the ground that in that case the agreement was to submit the whole controversy to arbitration. It will be observed, too, from the quotation above, that the Kelly case in effect approved the rule which theNelson case adopted."
In Nelson v. R. R., supra, at p. 207, it is said: "This is not in conflict with the opinion in Kelly v. Trimont Lodge, 154 N.C. 98. In that case it is stated that the plaintiffs were entitled, under the rules and regulations, to the sum demanded, and the defendant denied the right of action. It was held that an agreement to submit the whole controversy to arbitration was not binding; but it is distinctly stated that it was competent to agree that the decision of a single fact, such as we have here, could be submitted to a tribunal within the order. When a member submits his claim to the committee he is entitled to a hearing, and is not concluded by its action if it is fraudulent or oppressive, of which the facts on this record furnish no evidence."
In S. c., 167 N.C. 185, the principle is reiterated that a party is not bound by the award of the committee if it is fraudulent or oppressive.
In Cyc. of Ins. Law (Couch), Vol. 1, part sec. 266, pp. 666-7, the law is thus stated: "There is a decided conflict of authority on the question of the validity of provisions undertaking to set up society tribunals with *Page 640 
exclusive jurisdiction and conclusive decisions as to controversies which involve property rights. The apparent weight of authority — at least, numerically as to cases and jurisdictions — denies validity to such absolute and arbitrary restrictions on the theory that they oust the courts of jurisdiction in violation of the law of the land; at least, where the society has assumed an absolute legal obligation to pay in a certain event, as distinguished from a mere engagement to pay such benefits as may be awarded by its officers or tribunals in the exercise of a discretion vested in them. Nor need remedies within the order always be exhausted where property rights are involved. And any rule which precludes a beneficiary from bringing an action in the courts, even though no remedies can be had within the order because of the default or nonaction of its officials over whom the beneficiary has no control, is unreasonable and contrary to public policy. A benefit society or association cannot make itself a judge in its own case by requiring that all claims or cases shall be tried by its tribunal in the first instance. But even in jurisdictions which in general deny, or at least do not concede, the validity of provisions purporting to make the decisions of internal tribunals conclusive upon claims for benefits, an exception is made where the insurance contract expresses no legal obligation to pay any definite sum, but only to pay such sums as may be determined or allowed by the officers or tribunals of the society, the distinction being rested upon the difference between a contract which creates an absolute legal liability and one which does not." 45 C. J., 270.
In support of the text in 51 A.L.R., supra, cases from both North Carolina and Ohio are cited. Therefore, the point is not material as to the law of Ohio controlling. Then, again, N.C. Code, 1931 (Michie), sec. 6287, is as follows: "All contracts of insurance on property, lives, or interests in this State shall be deemed to be made therein; and all contracts of insurance the applications for which are taken within the State shall be deemed to have been made within the State, and are subject to the laws thereof." Policies of insurance issued by foreign companies, the applications for which are taken in this State, are to be construed in accordance with the laws of this State. Horton v. Life Ins. Co.,122 N.C. 498. A provision in a contract of insurance that, "This contract shall be governed by, subject to and construed only according to the laws of the State of New York, the home office of said association," is void in so far as the courts of this State are concerned. Blackwell v. Life Assn.,141 N.C. 117. See Modern Woodmen of Am. v. Mixer,267 U.S. 544. In the present case the allegations of the complaint clearly bring the case under the jurisdiction of this State.
The only question now under consideration in this jurisdiction was there any evidence to support the finding of the jury on the following *Page 641 
two issues: "1. Did the defendant unreasonably, arbitrarily, and in want of good faith, reject plaintiff's claim for a monthly compensation on account of alleged permanent and total disability? Answer: `Yes.' 2. Is the plaintiff totally and permanently disabled? Answer: `Yes.'"
What was the evidence succinctly, taking the circumstances: The plaintiff was not in arrears under the policy and had, on account of total and permanent disability, been receiving $75.00 a month since 1927. On 19 November, 1931, he agreed with defendant, to release his rights under the Relief Department and receive $50.00 a month under the Disability Benefit. In March, 1933, plaintiff was cut off and required to furnish evidence of his total and permanent disability. The following witnesses testified to the effect that plaintiff was totally and permanently disabled: The plaintiff; Dr. D. R. Bryson, an expert and plaintiff's attending physician; Dr. A. C. Ambler, an expert who examined plaintiff at defendant's request. The Local Lodge's report to the General Secretary and Treasurer shows: "We beg to inform you that at a regular meeting of Lodge No. 455, held 23 May, Asheville, N.C. the above application for Disability Benefit Allowance of Brother Robert Cordell, of Lodge No. 455, was duly considered and approved." The International President disallowed the claim, and on appeal the Board of Directors also disallowed it. Dr. P. R. Bennett certified to defendant, at its request, "that he is totally disabled, and it is my opinion he always will be." On the trial, Dr. T. W. Folsom, an expert, testified: "I think the plaintiff is permanently and totally disabled," and has been in that condition three and a half years. G. N. Denton, Financial Secretary of Blue Ridge Lodge, testified: "I have observed his physical condition. He has been sick for the last 10 or 12 years to my knowledge and I, as an officer of the defendant, knew that." Dr. Charles Hartwell Cocke, an expert, testified: "I would say that my opinion is, from the nature of the disabilities that I have observed in Mr. Cordell, that he has been continuously disabled and totally disabled from gainful occupation since I first knew him, in December, 1927." Plaintiff's wife's testimony is to like effect. The plaintiff was unable to travel to Ohio to appear in person before the committee which cut him off.
The testimony of Dr. Edward W. Schoenheit, the witness for defendant, was to the effect, "I don't know whether I can give an exact answer as to what I found Mr. Cordell was suffering from in October and November, 1933; but I was asked to try to find a diagnosis at that time, whether or not he was suffering from active tuberculosis; whether or not tuberculosis was the cause of his present disability," etc.
Under the policy plaintiff was entitled to recover for total and permanent disability from engaging in any occupation, etc. Dr. Schoenheit was directed by defendant to diagnose "Whether or not he was suffering *Page 642 
from active tuberculosis; whether or not tuberculosis was the cause of his present disability." It would appear that defendant had the idea that if plaintiff did not have active tuberculosis plaintiff would be cut off, although he was totally and permanently disabled. This was not defendant's contract with plaintiff. It appears that all the positive evidence was to the effect that plaintiff was totally and permanently disabled under the provisions of the policy. Dr. Schoenheit's evidence was not to the point in controversy and negative evidence. It has been long settled in this jurisdiction that positive evidence is entitled to more weight than negative testimony. State v. Murray, 139 N.C. 540. The temporary holding of the position of justice of the peace is not material from the evidence. We think all the evidence shows "a state of bodily incapacity." Gossett v.Ins. Co., ante, 152.
Notwithstanding all the positive evidence, and, in fact, it may be conceded that all the evidence as to the total and permanent disability of plaintiff under the recovery clause was one way, the defendant's Board of Directors denied plaintiff's right for compensation under the policy. We think the matter was properly left to the jury. The charge of the court below to the jury was fair and impartial, applying the law to the facts. In fact, there was no exception and assignment of error to any part of the charge.
The second question presented: "Did the court err in excluding the constitution of the defendant from the evidence?" We think not. All the material parts of the constitution of the defendant that bore on the controversy were allowed to be introduced. The constitution, including index, is a book comprising 391 pages. At least, there was no prejudicial error.
The third question presented: "Should the recovery have been limited to the Disability Fund and the Disability Benefit Department of defendant organization?" This action was against the defendant. It contended that it owed plaintiff nothing. Under his Beneficiary Certificate, the plaintiff did not sue a department of defendant, but the defendant. In fact, he could not sue a part of defendant's activities. Under the present judgment defendant can pay plaintiff out of its Disability Fund and the Disability Benefit Department. It is a matter of bookkeeping on the part of defendant. On the entire record, we see no prejudicial or reversible error.
No error.