Chief Justice Robertson
-delivered the Opinion of the Court.
In 1831, Thomas Jones, of the city of Louisville, sold to James Rudd and Horatio Ball, co-merchants in the ’ same city, a large stock oí Queensware, then but recently imported from England, for a stipulated rate of advance on the prime cost; for which they were to make payment in instalments, to be secured by negotiable notes. The greater portion, possibly all, of the articles having been delivered, the purchasers refused to give their negotiable notes, in consequence of some misunderstanding, actual or feigned, as to the quantity and quality of the wares: and thereupon Jones sued them, in, an action of assumpsit, in which he declared on the special contract, and on an indebitatus assumpsit for a specified sum, and on a quantum valebant, averring that the stock was worth twenty thousand dollars, and obtained a verdict for fifteen thousand nine hundred and eighty dollars, sixty cents. Neither party seeming to be satisfied with the verdict, it was set aside by consent; and the case was referred to the arbitrament of Isaac Stewart, Purley Chamberlain, and S. S, Goodwin: who, on the 17th of-January, 1834, returned to the Circuit Court, an award in favor of Jones, for a balance of $3,990 60—the sum qf $12,500. having been paid at the time of the submission. The aggregate of the sum awarded and of that which had been paid being increased by another intermediate payment of $2,955 30, which was noticed and credited in the award—the whole amount adjudged to Jones by the arbitrators, was $19,445 90.
The Court having rendered a judgment on the award, for the $3,990 60, Rudd and Ball filed a bill in changery enjoining the judgment, and praying for a decree. *230 setting aside the award, on the ground of alleged partiality and fraud, inferred by them, altogether from the amount awarded. The arbitrators, as well as Jones, having been made defendants, they all answered, repelling the charge of bias and improper conduct, but omitting to state, as required by the bill, the data on which the award had been made.
Arbitrators, being the judges chosen by the parties themselves, constitute their ultimate tribunal, as to fact and law; and ¡mere error of judgment as to either, is no ground for reversing or vacating the award. Excess in the amount awarded, is no ground for setting the award aside—unless it issogreatastoin dicate fraud, partiality or prejudice, or show conclusively that the arbitrators included matters in their decision which had not been submitted to them.
When a suit is referred, the declaration (if any) goes with it, and if there are divers counts—as (in assumpsit,) a special count upon an agreement, a general indeb(iaiu-vuid also a quantum valebant, the arbitrators must judge for themselves which count or counts the proof sustains: whether there was a binding contract, or an imperfect one, under which the def’t obtained goods, but which the pl’tf might abandon, or none at all, &c. and if they award a larger sum than could be justified by thespecial'count, that does pot show that the award is excessive; and even if it did, that fact alone would not be fatal to it.
*230 There being no proof of misconduct or partiality, unless it could be inferred from the amount of the award, and the characters of the arbitrators having been shown, by pi’oof, to be as good as those of any other citizens of Kentucky, the Circuit Court dissolved the injunction, and dismissed the bill: and we are now to revise that decree.
The award does not exhibit, on its face, any evidence of miscalculation or mistake. But it is contended, that the amount paid and awarded exceeds the utmost sum to which Jones was entitled, according to the admitted terms of the contract, by, at least, thirteen hundred dollars ; and that, the criteria for ascertaining the true amount of liability to Jones, having been fixed and plain, it must be evident, either that the arbitrators transcended the submission, or that the award is per se sufficient evidence of the partiality or corruption of the arbitrators.
A Court of justice cannot, however, in our opinion, thus decide. The parties having made the arbitrators judges between them, mere erroneousness in their judgment will not be sufficient for reversing or vacating the award. As to judgment respecting the law of the case submitted, they were the ultimate tribunal. And if the amount awarded be, as alleged, excessive, the excess is not so great, or of such a character, as to show either that the arbitrators considered any matter not submitted to them, or that partiality, prejudice, or fraud produced the extra allowance.
It is true, that the suit, and nothing but the suit, as pending at the time of the submission, was referred; and it may be, as argued, also obvious, that, upon the contract, if that be enforced, Jones would not, slricii juris, be entitled to altogether as much as was awarded to him: yet, nevertheless, the arbitrators may have decided on the *231 general count for a quantum valebant, upon which, if Jones could recover, he would have been unrestricted by the agreement as to price, and therefore might justly and lawfully, as far as this Court can know, have recovered as much as was awarded, and, perhaps, more. That general count was, of course, submitted, as well as the other counts in the declaration; and if Rudd and Ball had not completed the contract, so as to have acquired a perfect legal right to the Queensware, Jones would have had a right to recover the value of it, as they had appropriated it to their own use.
A failure or omission by arbitrators made defendants to a bill to set aside the award,to show the precise grounds of their determination, in their answer, though called upon in the bill, to do so, oralikeomission by a party to the award, is entitled to little or no weight—especially, when there is no indication of an intentional conceal mentor evasion.
Now, there is at least plausible ground for inferring that Jones might have been entitled to a waiver of his agreement, and to a recovery of the actual value of the ware. But, whether he might have done so or not, the arbitrators had the right to decide the question of law for themselves; and even though they may have decided erroneously, their judgment is final.
There can be no certain ground, therefore, for the assumption that the award is excessive. But if it were clearly and indisputably exorbitant, that fact alone would be insufficient to convict men of high and hitherto unquestioned characters, of fraud or partiality: because, comparatively, the alleged excess is not very great, and it cannot be said, upon any just view of the case, that there was no semblance of authority to award so much.
The omission by the arbitrators to disclose, in their ■answers, all the grounds of their decision, is not entitled to much effect in giving complexion to their official conduct. Nor should the inability of Jones to state distinct and satisfactory reasons in support of the conclusion reported by the arbitrators, have any material influence: for the arbitration seems to have been protracted for many successive days of arduous investigation; and Jones may, therefore, have been ignorant as to the entire process adopted by the arbitrators; and even they ■themselves could not be expected to have been able to disclose all the material facts and reasonings which brought them to their final conclusion. And there is nothing in the tone or character of the answers, which can be evidence of a disposition to conceal any material *232 fact which the respondents should be presumed to have recollected and to have known the importance or duty of communicating.
Wherefore, being clearly of the opinion, that there is no proof of fraud, or misconduct, or such mistake as can be corrected, we cannot disapprove the decree of the Circuit Court, without shaking the stability of judicial awards, and subverting the long and well established doctrines of the law respecting their validity and effect.
Wherefore, the decree is affirmed.