MICHAEL WOLFSTERN and ABBIE WOLFSTERN

*v.*

THE PENNSYLVANIA RAILROAD VOLUNTARY RELIEF DEPART-
MENT, THE PENNSYLVANIA RAILROAD COMPANY and MARY
E. SOMERS, sometimes known as Mary E. Reilly.

[Decided August 31st, 1909.]

1. Though the scheme of a railroad company organizing an association
for the benefit of its employes to establish a fund to pay death benefits is
violative of the General Insurance law, it does not affect the contract be-
tween the railroad company and an employe, but the contract, in the
absence of legislation on the subject, is enforceable.

2. Where the bill by the parents of a deceased member of a benefit
association composed of the employes of a railroad company, organized by
it for the establishment of death benefits, against the person designated by
the employe as beneficiary, alleges that the object of the association was
the establishment and management of a fund for the payment of death
benefits, and sets forth only two of the regulations of the association and
a part of a third, any doubts arising as to the legal or equitable rights
of the parties, on account of the difficulty of discovering the terms of the
contract because of the failure to set forth all the regulations, must be
resolved in favor of defendant.

3. A railroad company organized an association for the establishment
and management of a fund for the payment of accident, sick and death
benefits. The dues payable by the employes of the railroad company were
taken from their wages as a voluntary contribution. The railroad com-
pany agreed absolutely to pay the benefits according to the contract, in
consideration of the payments made by the employes, whether such pay-
ments were sufficient or not.—*Held*, that the fund created, though deemed
a trust fund for the benefit of the employes and their beneficiaries, could
not be controlled by the employes, except possibly in equity to prevent a
diversion of the fund or to secure an equitable distribution thereof on the
winding up of the scheme.

4. A railroad company organized an association for the benefit of its
employes, to establish a fund to pay accident, sick and death benefits. An
employe desiring to become a member had to apply therefor and designate
the beneficiary to whom the death benefit should be payable. and the bene-
ficiary so named, on the approval of the superintendent, was entitled
to the death benefit, provided good reasons were given for the designa-
tion.   An employe applied for membership, and designated one as
beneficiary whom he described to be his wife.   The designation was

approved.—*Held,* that the beneficiary so designated, though not the wife of the employe, was entitled to the death benefit as against the employe's parents.

On motion to dismiss bill under rule 213.

*Mr. Maximilian T. Rosenberg,* for the motion.

*Mr. J. Merritt Lane, contra.*

STEVENSON, V. C.

The question to be determined is whether the bill sets forth any equitable cause of action on behalf of the complainants. The first party named as defendant in the title of the cause is a mere bureau or department of the Pennsylvania Railroad Company. The bill was amended so as to strike out this supposed party. The actual contest in the cause is between the complainants on the one hand, and the defendant Mary E. Somers on the other. These parties are rival claimants to a death benefit ($500), payable by the Pennsylvania Railroad Company on account of the decease of an employe. The complainants are the parents of the deceased employe; the defendant Mary E. Somers is the beneficiary designated by the employe and represented by him to be his wife.

The present motion is made solely on behalf of the defendant Mary E. Somers, and it does not yet appear that the Pennsylvania Railroad Company desires or intends to interpose any defence to the complainants' suit, or to contest its liability to pay the death benefit in dispute to one or the other of the two parties claiming the same.

The relations of the Voluntary Relief Department established by the Pennsylvania Railroad Company to the company itself and to the employes of the company who become members of this department, are disclosed to some extent in the opinion of Vice-Chancellor Bergen in the case of *Pennsylvania Railroad Co.* v. *Warren,* 69 *N. J. Eq.* (3 *Robb.*) 706. The scheme which seems to be a combination of a sick benefit society and a life insurance company, has been adopted by several of the larger railroads of the country. In some states the courts,

probably basing their decision upon views of the essential nature
of insurance contracts and insurance business which do not
obtain in this state, have held that this scheme in its entirety
does not involve the prosecution of insurance business. *Donald
v. C. B. and Q. R. R. Co.* (*1895*), *93 Iowa 284;* *33* L. R. A.
*492, 496; Johnson* v. *Philadelphia and Reading Railroad Co.*
(*1894*), *163 Pa. 127;* *29 Atl. Rep. 854.*

The law of New Jersey in regard to the character of business
such as this relief department is organized to prosecute, may
be ascertained from the following cases: *State* v. *Taylor*
(*1893*), *56 N. J. Law* (*27 Vr.*) *49;* *S. C. affirmed, Id. 715;
Goldenstar Fraternity* v. *Martin* (*Court of Errors and Ap-
peals, 1896*), *59 N. J. Law* (*30 Vr.*) *207; Holland* v. *Supreme
Council, &c.* (*1892*), *54 N. J. Law* (*25 Vr.*) *490, 493;* see note
to *Penn Mutual Life Insurance Co.* v. *Mechanics Savings, &c.,
Co., 38 L. R. A. 1, 40; 1 Bac. Ben. Soc. & L. Ins. §§ 50, 51, 52.*

No legislation in New Jersey has been cited which relieves
the defendant corporation from the operation of our General
Insurance law. *P. L. 1902 pp. 445, 446, §§ 88, 89.* Whether,
in case the whole scheme of the relief department of the defend-
ant corporation is violative of the letter and policy of our in-
surance laws, that fact can in any way affect the equities claimed
by strangers to the contract between the defendant corporation
and its employes, is a question which has not been raised in
this case and will not be considered. Whatever may be the
relation of this relief department to the insurance laws of the
state, the contract with which we have to deal is plainly en-
forceable between the parties, and will be regarded as enforce-
able in this court at the suit and on behalf of any party for
whose benefit the contract was made.

1. The contract in this case is in writing and consists of the
application of the employe of the defendant corporation, the ac-
ceptance of the superintendent of the relief department, an
officer of the corporation, and the regulations of the relief de-
partment approved by the board of directors of the defendant
corporation.

The written application expressly refers to the regulations
and incorporates them into the contract. While the bill alleges

that the object of the relief department as expressed in the regulations is the establishment and management of a fund for the payment of accident and sick benefits to the employes of the Pennsylvania Railroad Company, and death benefits to "the relatives (of such employes) or other beneficiaries specified in the applications of such employes," only two of the regulations and a portion of a third are set forth. It may be that no more light would be thrown on this case if the entire book of regulations had been presented to the court in the bill of complaint, but if any doubts arise as to the legal or equitable rights of any of the parties to this suit on account of the difficulty of discovering the exact terms of the contract, the solution of such doubts, I think, must be in favor of the defendants. *Omnis presumptio contra proferentem.*

2. In this case we have to deal with contract relations pure and simple, unaffected by any special charter from the state, or any provisions of a statute regulating the creation and operations of benevolent associations, or *quasi* benevolent insurance departments of corporations. No legislation has been cited at the argument qualifying the above statement. This characteristic of the case before the court distinguishes it from numerous cases such as *Britton* v. *Supreme Council of the Royal Arcanum, 46 N. J. Eq. (1 Dick.) 102; Supreme Council, &c., v. Bennett, 47 N. J. Eq. (2 Dick.) 39; reversed, Id. 563; American Legion of Honor* v. *Perry, 140 Mass. 590, 592; Grand Lodge A. O. U. W.* v. *Connolly, 58 N. J. Eq. (13 Dick.) 180.* On account of this distinction these cases, and similar ones, in my opinion, are destitute of a large part of the force attributed to them by counsel for the complainant in his oral argument and brief.

3. While the Pennsylvania Railroad Company in this relief fund scheme offers to its employes the opportunity to enter into certain contract relations with the company, under which, in consideration of regular payments made by them, sick and accident benefits may be paid to themselves, and death benefits may be paid to their relatives and appointees, it does not appear that the employes of the company who enter into the offered contract with their employer become members of any fraternal organization or acquire any right to govern or control the operations of

the relief department, or the investment or expenditure of its moneys. The employes pay their stipend, which is taken from their wages as a "voluntary contribution," and in case the contributions of the employes with legacies, gifts and interest on investments shall not be sufficient to enable the company to make the payments called for by its contracts, the company itself supplies the deficit. Conceding that the funds of the relief department are held by the Pennsylvania Railroad Company as a trust fund for the benefit of the so-called members of the relief department, it seems to be a guaranteed trust fund. Beyond the possible right of the employes who make these contracts with their employer to come into a court of equity to prevent a misappropriation or diversion of the trust fund, or to secure its equitable distribution in case of the winding up or abandonment of the scheme, no right of the employes to intervene in the administration of the fund is apparent. The employer agrees absolutely to pay the sick, accident and death benefits according to the contract, in consideration of the payments made by the employes, whether those payments with any increase from interest or contributions from outsiders to the fund shall be sufficient for the purpose or not.

Conceding that the moneys contributed by the employes constitute a trust fund, the object of the trust is to enable the employer to carry out his contracts. No provision is made for distributing any possible surplus among the contracting employes or any other beneficiaries. If the regulations expressly provide for the distribution of such supposed surplus, no such provision is set forth in the bill. Inasmuch as the employer stands liable to supply any deficiency, it would seem that it has the right to appropriate any surplus. We may surmise that as a matter of fact the stipends which the employes are asked to pay and which are fixed by the employer, are as nearly as possible placed at a figure which will prevent the accumulation in the course of years of a large surplus to which the legal title, and, so far as appears in this case, the equitable title, would be vested in the employer. It seems to be entirely possible, however, that if large numbers of employes of the Pennsylvania Railroad Company should from time to time enter into this peculiar contract,

and subsequently leave the employ of the company, a substantial surplus fund might be accumulated. It may be that a question can be raised whether there is or is not, strictly speaking, a fund held in trust by the Pennsylvania Railroad Company for the satisfaction of these contracts which it makes with its employes, but no such question has been raised in this case, and no such question will be considered. It will be assumed that a trust fund is exhibited in this case, out of which the payments which the Pennsylvania Railroad Company is absolutely bound to make under its contracts with its employes are primarily to be made.

4. The following are the important features of this relief fund scheme, which must be considered in determining the nature of the legal and equitable relations of the three parties to it, viz., (1) the employe (in this instance William Wolfstern) who sees fit to apply for "participation in the benefits of the relief fund," or, in other words, to apply to have the Pennsylvania Railroad Company enter into a prescribed contract with him; (2) the employer, the Pennsylvania Railroad Company, and (3) beneficiaries and possible beneficiaries who under the terms of the contract shall or may receive the death benefit.

(1) No employe has a right to be admitted into so-called membership of the relief department, or, in other words, to have his employer, the railroad company, enter into the prescribed contract, or any other contract with him. No employe can be elected to membership by his co-employes. The absolute right to *approve* the application in every case remains with the Pennsylvania Railroad Company. There are obvious reasons of policy which would prevent the railroad company from arbitrarily excluding any of its employes, *i. e.,* from arbitrarily declining to enter into the prescribed contract with such employe. All the legal and equitable rights, however, of all parties arise out of the written contract between the employe and his employer, the Pennsylvania Railroad Company, which each party is absolutely free to make or not as he sees fit.

(2) The applying employe must make his application in writing according to a prescribed form, which has a blank in which he "may designate" the beneficiary to whom upon his decease a death benefit shall be payable. The employe, however,

is not obliged to designate such beneficiary. The blank may remain unfilled if the superintendent of the relief department, the representative of the defendant corporation, sees fit to approve the application in that form.

(3) If no beneficiary is designated to receive the death benefit the same then is payable as prescribed in rule No. 29. In this instance, if William Wolfstern's application had not designated a beneficiary—if the blank had not been filled in—the death benefit payable under his contract would belong to his father and mother, the complainants in this suit.

(4) Rule 28 prescribes that

"the applicant *may* in his principal application, or subsequently in the prescribed form, designate a beneficiary or beneficiaries who shall upon the approval of the designation by the Superintendent of the Relief Department be entitled to receive his death benefit; provided that good and sufficient reasons must be given for such designation of other than relatives or legal representatives."

We find in this rule 28, taken in connection with rule 22, which is partly quoted in the bill of complaint, a somewhat singular series of concentric propositions.

(*a*) As we have seen, the opportunity of an employe to enter into a contract is, so far as legal obligations are concerned, absolutely within the will and discretion of the employer. There is nothing in this whole scheme as disclosed by the bill which obligates the Pennsylvania Railroad Company to make one of these contracts with any of its employes, and rule 22 expressly provides that the application, *i. e.*, the application as a whole, must be *approved* by the superintendent of the relief department. The absolute power to approve or not to approve of any application would seem to include the power to dictate the designation of the person or persons to receive the death benefit.

(*b*) The contract expressly provides that the designation of a person to receive a death benefit must in every case be approved by the superintendent of the relief department. This provision seems to have no legal force so far as the original application is concerned, for reasons which have been stated above. But the contract provides for the substitution of the beneficiary by others from time to time at the will of the member, and in regard to all

such substitutes the rule requiring the designation to be approved by the superintendent is necessary in order to give the Pennsylvania Railroad Company through its officer, the superintendent, absolute control, the right to veto any change of beneficiary which the employe may desire to make.

The original designation of a beneficiary to receive a death benefit and the substitution at any time of any future beneficiary, is thus absolutely within the control of the Pennsylvania Railroad Company acting through its superintendent. The object of this provision seems to be apparent. It operates to protect the employe, and no doubt often to protect the duly designated beneficiaries of employes from unwise and improvident substitutions.

(c) When it is perceived that the original designation of a beneficiary is entirely subject to the approval of the superintendent of the relief department, and any substitution in like manner is subject to the approval of this officer, it is not quite clear what legal force can be given to the proviso to rule No. 28 above quoted, requiring "good and sufficient reasons" to be given for the designation of any beneficiary "other than relatives or legal representatives." This proviso in terms applies with equal force to an original designation and a substituted designation, and yet both the original designation and the substituted designation are in all cases subject to the approval of this same superintendent.

Let us assume, however, that the requirement of "good and sufficient reasons" has some legal force and effect. Let us suppose that in the case of relatives and legal representatives the superintendent is under a legal obligation to give his approval of a substituted beneficiary in the absence of reasonable objections. If such be the case then where the applicant designates as the beneficiary one who is not his relative or his executor or administrator, the superintendent cannot in any way or in any court be compelled to give his approval of the substitution merely because no reasonable objections are apparent; the superintendent may refuse to approve unless "good and sufficient reasons" are presented to him. It is not the absence of objections but the affirmative presentation of "good and sufficient

reasons" which entitles the employe to the approval of the superintendent. This rule is also applicable to the designation of a beneficiary when none was named in the original application.

Whether there is any practical value in the legal distinction above drawn, it is hardly worth while to consider. The object of the proviso is perfectly plain. The Pennsylvania Railroad Company does not propose to go into a general life insurance business with its employes. It does not hold itself out to them to issue policies on their lives payable to any person whom the assured may select. This life insurance business is carried on by the Pennsylvania Railroad Company with a limited class, viz., its employes, and practically for the benefit of another limited class who may be described generally as the relatives of the employes. This proviso to rule No. 28 distinctly notifies all employes of the company, who contemplate entering into this peculiar contract with their employer, and paying out their money for the advantages to be secured thereby, of the limitations controlled by their employer upon their power to designate a beneficiary who can receive the death benefit according to their contract.

5. Having in view the essential nature of the contract presented to this court by the complainants' bill, we now come to the facts of this particular case which give rise to the particular question to be answered. William Wolfstern, an employe of the company, now deceased, in his lifetime made his written application in due form for participation, &c., and this application was approved by the superintendent of the relief fund. The application named as the beneficiary to receive the death benefit, the defendant Mary E. Somers, who was described by Wolfstern as his wife. The claim of the complainants in this case may be summed up in the proposition that when William Wolfstern died there was then living no beneficiary designated by him with the approval of the superintendent of the relief department. It is insisted on behalf of the complainants that the formal approval of the superintendent of the designation of Mary E. Somers was nugatory and void on account of the fraud practiced by William Wolfstern upon the Pennsylvania Railroad Company. The alleged fraud consisted in the representation that Wolfstern made

that the designated beneficiary was his wife, when in fact she was not his wife, but the wife of another man.

Wolfstern agreed in his application that "any untrue or fraudulent statement made" by him to "the medical examiner or any concealment of facts" in the application, should forfeit all rights and benefits with certain exceptions which need not be specified.

It may be that the express misrepresentation made by William Wolfstern in his application to the effect that Mary E. Somers was his wife should not be deemed a "concealment of facts." It is noticeable that the effect of untrue or fraudulent statements is only dealt with when such statements are made to the medical examiner. The common form employed in the prescribed application to many benefit societies appears to have been avoided in this case.

The complainants do not insist that by virtue of the above-quoted provisions any forfeiture was effected. Such a result would involve the failure of their entire case. The claim on behalf of the complainants is that the contract between William Wolfstern and the Pennsylvania Railroad Company is valid, but that it contains no valid designation of a beneficiary to receive the death benefit.

The complainants are not asking to have the contract between Wolfstern and his employer declared void on the ground of fraud. They have no standing in court to ask for any such decree—a decree which would destroy the basis of their claim. On the other hand, the Pennsylvania Railroad Company has not in any way by a cross-bill in this case, or otherwise, denied its liability to perform its contract according to its plain written terms.

I am unable to perceive any equitable right in the complainants to have any part of the written contract between William Wolfstern and the Pennsylvania Railroad Company to which they (the complainants) were entire strangers, set aside on account of fraud practiced by William Wolfstern upon the railroad company. This view, I think, is sustained by the opinion of the court of errors and appeals in the case of *Tepper*

v. *Supreme Council of the Royal Arcanum* (1900), *61 N. J. Eq.* (*16 Dick.*) *638, 644.*

The false representation made by Wolfstern to the effect that Mary E. Somers was his wife could not injure the other so-called members of the Pennsylvania Railroad Voluntary Relief Department. If Wolfstern had told the superintendent the truth in regard to the relations between himself and his proposed beneficiary, any one of various results might have followed. The superintendent might have regarded the selection of this particular beneficiary as an appropriate recognition of moral obligations resting upon Wolfstern, and with that view he might have approved Wolfstern's application and Wolfstern's designation therein contained. On the other hand, the superintendent might have declined to approve Wolfstern's designation, and thereupon Wolfstern might have declined to enter into the contract which called upon him to make periodical payments from his wages.

Assuming that the false representation made by Wolfstern which, it must be borne in mind, was in the original application at the very origin of the contract relations between Wolfstern and his employer, induced the superintendent to give his approval of the designation of a beneficiary, which approval otherwise he would have withheld, at any future time this superintendent or some other superintendent with knowledge of all the facts might have ratified the approval formerly given.

Without going into the question whether after the death of the employe it is competent for the Pennsylvania Railroad Company to set aside any part of this contract on the ground that the employe in his application made false statements, which were the basis of the approval by the superintendent of the employe's designation of a beneficiary to receive the death benefit, it seems to me that no advantage of any such false representation can be taken by any party other than the Pennsylvania Railroad Company. This railroad company is carrying on a life, health and accident insurance business, and its policy apparently is to prevent the scope of such business from extending beyond the limitations defined by the interests of its employes. It would be hard to establish a standard by which to determine what are good and sufficient reasons for approving the designa-.

tion of a beneficiary to receive a death benefit under one of these contracts. The judgment of the superintendent seems to be the only practicable test. If a designation, either original or substituted, once has received the approval of the superintendent, is it possible that the railroad company or anyone else could thereafter, at any time before or after the death of the member, allege that the designation was invalid because in fact the reasons given to the superintendent for the designation were not "good and sufficient?" It would open the door, I think, to litigation which should be discouraged if the action of the superintendent of the relief department in approving either an original or a substituted designation could be challenged by a stranger to the contract, either in the lifetime of the employe member or after his decease. All the provisions making it plain to the employes of the railroad company that the original designation of the persons to receive the death benefit, and especially all substituted designations, are subject to the approval of the superintendent, should, in my opinion, be construed in accordance with their evident purpose. They are, I think, honest notices, the object of which is to inform all the employes of the railroad company of the principles which would guide the employer in exercising its discretionary control over the designation of beneficiaries to receive death benefits. No employe could go into this insurance scheme in ignorance of the fact that the policy of the company is to confine the payment of death benefits, apart from exceptional cases, to relatives of the insured employes. The proviso to rule 28 above quoted, whatever its legal force may be, practically would tend to prevent disappointment, dissatisfaction and complaints.

We have seen that the complainants, in order to establish their right to this death benefit, must show that when Wolfstern died there was no beneficiary living whose designation had been approved by the superintendent. As a matter of fact there was such approved beneficiary, viz., the defendant Mary E. Somers. The designation, because of any fraud practiced by Wolfstern, was not void, but only voidable at most under well-settled rules of law.

6. I have endeavored to deal with this case as it was argued, assuming the case so argued to be precisely the case presented by

the bill of complaint. The argument has assumed that the false representation made by William Wolfstern procured the approval of the superintendent to the designation of the defendant Mary E. Somers as the person to receive the death benefit, and that if such false representation had not been made the superintendent would have declined to approve such designation. The exact allegation in regard to that matter is that if the superintendent "approved the designation of Mary E. Somers by the said William Wolfstern, it was approved by him under false and fraudulent representations, to wit, that the said Mary E. Somers was the wife of the said William Wolfstern." It does not follow from this proposition that if the exact truth had been told the superintendent would not have given his approval for reasons which he would have deemed "good and sufficient." Wolfstern may have preferred to make the false representation rather than to tell the whole truth, when either course would have been equally effective in procuring the desired approval.

The bill alleges on information that when Wolfstern made his false representation he "knew that he could not give any good and sufficient reason for the designation of said Mary E. Somers as his beneficiary," and further alleges on information "that no good or sufficient reasons were or could have been given" for such designation. Whether these propositions are to be regarded as relating to facts to be taken as true on this motion, which is equivalent to a demurrer, or mere speculations or opinions in regard to the probable action of the mind of the superintendent under certain conditions, is a question susceptible of considerable legal and metaphysical argument. If the defendant Mary E. Somers should file an answer joining issue on these propositions I think that the litigation thereby set in court would illustrate the impolicy of allowing these parties to attack this contract between Wolfstern and his employer upon the grounds set forth in this bill of complaint. The bill tenders as an issue to be tried the question whether in fact there were good and sufficient reasons for the action in the way of approval which the superintendent saw fit to take. The theory of the bill seems to be that the court of chancery in determining the controversy between these parties will adjudicate whether or not there were

good and sufficient reasons for the approval of the designation of the defendant Mary E. Somers, and the goodness and the sufficiency of any alleged reasons must therefore be determined either by the judgment of the court or by the judgment which the court may conclude the superintendent would have made or ought to have made.

If the language of the proviso is to be taken literally, the important matter is not whether in fact there were good and sufficient reasons for approval, but whether such reasons were "given" presumably to the superintendent. If in such case Wolfstern might have stated good and sufficient reasons to the superintendent for the approval of his designation, but, from a motive of convenience, or delicacy, or pride, preferred to state a false reason, it would seem to be a strange result if the complainants on that account could now have this court declare such designation void. If in fact a good and sufficient reason existed the presumption is that the railroad company would, upon learning the truth, leave the original approval of its superintendent undisturbed or even expressly ratify the same.

A careful study of the objects and practical workings of this insurance department of the Pennsylvania Railroad Company, it seems to me, must greatly strengthen the conclusion that if after the death of an insured employe anyone has a right to defeat the payment to the beneficiary designated by the assured and approved by the superintendent, on account of any false representation made by the assured or false "reason" given by him to induce the superintendent to approve his designation, such right must be confined strictly to the Pennsylvania Railroad Company. Whether after the death of the assured employe it is competent for the railroad company to disavow or annul the approval of its superintendent, on the ground that such approval was obtained by fraud, is a question not raised in this case.

An order will be advised dismissing the bill as to the defendant Mary E. Somers, with costs.