## Reager's Administratrix v. Pennsylvania Company, Trustee, et al.

(Decided April 14, 1916.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Arbitration and Award—Submission.—When parties voluntarily submit their differences to arbitrators, who make an award within the terms of the submission, the original claims of the parties are merged in the award, and it is thereafter the basis of their rights, and their original causes of action are extinguished, and is conclusive between the parties and their privies until it is set aside in a proper proceeding.

2. Arbitration and Award—Action to Set Aside Award.—Before a court is authorized to set aside an award, the impeaching proof must be strong and clear, that the award was made by mistake, or induced by the fraud of the prevaling party, or through the fraud, corruption, or undue partiality of the arbitrators.

3. Arbitration and Award—Impeachment or Vacation.—An honest mistake of the arbitrators as to the law or facts will not impeach an award, unless the mistake is so palpable that it clearly appears that it results in a decision, other than the intention of the arbitrators.

4. Arbitration and Award—Mistake—A mistake so gross and palpable as to amount to proof of misconduct will impeach an award.

5. Arbitration and Award—Proceedings.—Arbitrators are not bound by the strict and technical rules of law, but they must proceed with due respect to the rights of the parties and natural justice.

6. Arbitration and Award—Action to Set Aside Award—Limitation of Actions.—An action to set aside an award, because of fraud or mistake, must be instituted within five years from the discovery of the perpetration of the fraud or the making of the mistake, and one who institutes such an action after five years from the making of the award must show that he could not, with reasonable diligence, have discovered the fraud or mistake sooner.

BENNETT H. YOUNG and HENRY BEDINGER for appellant.

GIBSON & CRAWFORD for appellees.

Opinion of the Court by Judge Hurt—Affirming.

This is the second appeal of this case. The opinion rendered upon the former appeal may be found in 152 Ky. 824, in which a full statement of the facts is set out, which renders unnecessary a more particular history of the case than is herein set out. J. H. Reager, who was a car inspector for the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, received an injury, on the 17th day of May, 1893. He was a member of the Voluntary Relief Department of the Pennsylvania lines west of Pittsburg. This department was organized by the various railroad companies comprising the Pennsylvania lines west of Pittsburg, and its purpose was to provide sick and accident benefits for the injured and sick employees of the railroad companies, whether injured through negligence or not. Reager was paid as accident benefits by the department from the time of his injury, for fifty-two weeks, the sum of $1.50 per day, and thereafter, until July 31st, 1904, the sum of seventy-five cents per day, aggregating about $3,200.00. When an employee became a member of the Voluntary Relief Department, he agreed in writing to be bound by the regulations of the department, among which are the following:

"I also agree for myself and those claiming through me to be especially bound by regulation number 65, providing for final and conclusive settlements of all disputes by reference to the superintendent of the relief department, and an appeal to the advisory committee."

Regulation number 65 is as follows:

"All questions or controversies of whatsoever character arising in any manner, or between any persons in connection with the relief department, or the operation thereof shall be submitted to the determination of the superintendent of the relief department, whose decision shall be final and conclusive thereof, subject to the right of appeal to the advisory committee within thirty days after notice to the parties interested in the decision.

"When an appeal is taken to the advisory committee it shall be heard by said committee without further notice at its next stated meeting, or at such future time as they may designate, and shall be determined by a vote of the majority of a quorum, or more, present at such meeting, and the decision so arrived at by the advisory committee shall be final and conclusive upon all parties, without exception or appeal."

Regulation number 45 is as follows:

"Payments on account of disablement by accident will only be made upon the disablement being shown to have resulted solely from accidents occurring to members in the performance of duty in the service and to which they were assigned, or which they were directed to perform by proper authority, or in voluntarily protecting the property of the company in whose employ they are. This shall include accidents occurring to members at points upon the employing company's property, which they necessarily pass in going to or from work, and which do not result from their voluntarily or unnecessarily exposing themselves to danger. There must be exterior or other positive evidence of injury, and satisfactory evidence that it inc..pacitates the person for performing his duty in the service, or, when of a permanent character, to earn a livelihood in an employment suited to his capacity. Disablement from an accident occurring otherwise than as aforesaid will be classed with sickness.

"Questions as to the permanent character of disability and the continued payment of benefits on account of the same shall be determined by the advisory committee."

The injury which Reager suffered was permanent, but a controversy arose between him and the Voluntary Relief Department as to whether his disability continued, or whether he was able to earn a livelihood in an employment suited to his capacity, and whether or not he was entitled to receive any further benefits from the relief department by reason of his membership therein, and the injury he had received. After an investigation, the superintendent of the relief department decided that Reager's disablement did not incapacitate him from earning a livelihood in an employment suited to his capacity, and on the 24th day of August, 1904, notified Reager of the decision and that he could receive no further benefits from the department. Thereafter, on September 4th, 1904, Reager filed a written appeal from the decision of the superintendent with the advisory committee, and requested the committee to review the decision and to set it aside. The advisory committee considered the appeal at its next regular meeting, of which time and place Reager had notice, and by a vote of the majority of the committee, the decision of the superintendent was sustained and approved, on the 28th day of October, 1904, and on the day following Reager was

notified of the action of the advisory committee upon his appeal and its decision thereon.

On the 13th day of April, 1905, ignoring the decision of the superintendent and the decision of the advisory committee, Reager filed this action against the Pennsylvania Company, Trustee, the Pittsburg, Cincinnati, Chicago & St. Louis Ry. Co., and the Voluntary Relief Department of the Pennsylvania lines west of Pittsburg, in which he set out his injuries, which he alleged were caused by the gross negligence of the P., C., C. & St. L. Ry. Co. and its servants; and alleged that he was permanently disabled from labor and incapacitated from all kinds of railroad duties; the establishment of the relief department and his membership therein, and the failure to pay him accident benefits after July 31st, 1904, and prayed that each of the appellees be adjudged to perform the conditions of the contract embodied in his certificate of membership in the relief department, and that he recover of them seventy-five cents per day for each day since July 31st, 1904, and to have a continuation of the payment of the benefits as long as his disability continued. Thereafter several amended petitions were filed, among which was one filed March 22nd, 1911, in which Reager sought a judgment for the recovery of seventy-five cents per day from July 31st, 1904, with interest thereon, and the further sum of $4,229.43.

On May 27th, 1905, the appellees filed an answer, in which they traversed the allegations of the petition, and, also, plead the decision of the superintendent and the advisory committee in bar of Reager's right of recovery. A demurrer was sustained to the plea of the appellees, based upon the decisions of the superintendent and that of the advisory committee.

On the 20th day of July, 1911, Reager died, and the action was revived in the name of his administratrix, who is the present appellant.

On the 8th day of January, 1912, a trial was had, which resulted in a judgment for appellant. The appellees appealed and the judgment was reversed by this court, which held that the court below was in error in sustaining a demurrer to the paragraph of the answer of appellees, which relied upon the decisions of the superintendent and the advisory committee as a defense, and remanded the cause for further proceedings.

On the 28th day of April, 1913, the appellant filed a reply, in which it was admitted that the superintendent of the relief department and the advisory committee had both adjudged that Reager was not so incapacitated from his injures as to be unable to earn a livelihood, in an employment suited to his capacity, but alleged that both decisions were false and fraudulent, and that the advisory committee, in making such decisions, was guilty of either fraud or mistake, or both fraud and mistake. The allegations of fraud and mistake were controverted by a rejoinder. Thereafter, the appellees filed an amended answer and rejoinder, in which the statute of limitations against relief on account of fraud and mistake was interposed. A demurrer was sustained by the court to this plea, to which appellees excepted.

Another trial was had in the court below, and at the conclusion of the testimony offered for appellant, the appellees moved the court to instruct the jury to find for them. The court sustained the motion upon the ground that the evidence offered did not conduce to prove that the decisions of the superintendent and advisory committee were made through fraud or by mistake, and the action was dismissed. The appellant has again appealed to this court, and the sole ground upon which a reversal of the judgment is sought is that the court erred to the prejudice of appellant in directing a verdict of the jury in favor of appellees.

The appellees insist that the court erred to their prejudice in holding that the appellant's cause of action was not barred by the statute of limitations, which bars a recovery or relief on account of fraud or mistake after five years from the discovery of the perpetration of the fraud or the making of the mistake.

On the former appeal of this case it was held that it was within the power of an association, such as the Voluntary Relief Department, to provide for a submission of the question, as to whether or not a member, who had suffered a permanent injury was incapacitated from same to earn a livelihood in an employment suited to his capacity, to an impartial tribunal selected by the parties themselves, and make its decision final as to such question, in the absence of a showing of fraud or mistake. It was, further, held that the advisory committee of the Voluntary Relief Department, as constituted, was such a tribunal, as it was selected in accordance with the

regulations of the department, and to become a member of which was a voluntary and not a compulsory act. Six of the members of the tribunal were selected by Reager and other contributing employees, and six were selected by the railroad companies, whose employees constituted the membership of the department. It was the same tribunal to which Reager submitted his case in the first instance and which granted to him accident benefits from May 27th, 1893, until July 31st, 1904. He voluntarily submitted his case again to this tribunal when he appealed from the decision of the superintendent. He had notice of the time and place at which the advisory committee would sit and determine his appeal. In the first instance, when he had the choice of either proceeding against the railroad for damages on account of his injury, or submitting his claim for benefits to the relief department, he chose the latter course, and received in benefits over $3,200.00. It would be very inconsistent to hold that Reager was bound by the first decision, which was in his favor, and therefore entitled to the benefits of such a decision, but was not bound by the last decision because it was adverse to his contentions. This tribunal being organized by the parties themselves for the decision of such questions as were in issue between Reager and the department, and the questions for decision being voluntarily submitted to it by the parties, if its decision should be treated as an ordinary award made by arbitrators, its decision would be conclusive upon the parties, unless the decision was made through fraud or made by mistake. The decision of the advisory committee was a final adjudication by a court, of the parties own choice. There is no contention that the award was not regular upon its face, and the decision rendered was within the terms of the submission. Hence, the decision was conclusive of the merits of the controversy, and it appears that the intention of the parties was that the decision should be final and conclusive. This judgment of the advisory committee then operated to extinguish any claim which Reager had, which was embraced in the submission, and the judgment constituted a bar to any action on his original demand. Until the judgment of the advisory committee was impeached upon sufficient grounds, in a proceeding appropriate to the case, it was conclusive. Shackelford v. Purket, 2 A. K. M., 435; Tevis v. Tevis, 4 T. B. M., 46; Evans v. McKinsey, Litt. Sel. Cas. 262;

Logsdon v. Roberts, 3 T. B. M. 255, 3 Cyc. 728, 729. If the decision had been favorable to Reager, thereafter, it would have constituted the basis of his rights, as to all matters embraced within the submission. The decision being adverse to him, it was binding upon him and his privies until it was impeached upon the ground that it was caused by fraud or made by mistake. He could not maintain a suit for relief upon his original claim before impeaching the judgment, because his original claim was extinguished by the judgment, and hence the judgment being voidable only and not void, it constituted a complete bar to his action until it was impeached and set aside.

In 3 Cyc. 728, this doctrine is stated:

"As between the parties and their privies, an award is entitled to that respect which is due to the judgment of a court of last resort. It is, in fact, a final adjudication by a court of the parties own choice, and until impeached upon sufficient grounds, in an appropriate proceeding, an award, which is regular on its face, is conclusive upon the merits of the controversy submitted, and it is not for the courts to otherwise inquire whether the determination was right or wrong, for the purpose of interfering with it, unless such power has been specially vested in them by statute, or unless the parties have intended that the award shall not be final and conclusive."

If the arbitrators only determine the questions submitted to them, and do not go beyond the terms of the submission, a mistake of judgment in their conclusions as to the weight to be given to facts embraced in the testimony, if their conclusions are honestly arrived at, is not a ground for setting aside the decision. The same rule applies to alleged mistakes of law as well as of facts. Rudd v. Jones, 4 Dana, 229; Galbraith v. Galbraith, 10 R. 935; Johnson v. Dulin, 10 R. 403; Whittaker v. Wallace, 1 R. 271; Harding v. Wallace, 8 B. M. 536; Lillard v. Casey, 2 Bibb, 459. Even where arbitrators have admitted illegal evidence, it is not a ground for impeaching their award, unless it appears that the decision was so based upon the improper evidence, that but for it the decision would have been other than the one made. A gross and palpable mistake as to the law or facts, which will constitute evidence of misconduct or undue partiality, however, is a ground of impeachment of an award. Fraud, corruption, or misconduct of the arbitrators, or

fraud used by one of the parties in securing an award will vitiate the decision. Arbitrators are not expected or required to always follow the strict and technical rules of law, but, if they have due regard for the rights of the parties and natural justice, it is sufficient.

The evidence offered in the court below fails to show that the advisory committee, in arriving at their decision, were laboring under any mistake as to the actual facts of the case. It is only a question of fact which it was called upon to decide, and hence there was no evidence of any mistake of law. While a court or other set of men might have arrived at a different conclusion from the facts submitted, there is no evidence of such a gross or palpable mistake in judgment as to be evidence of misconduct or partiality on the part of the members of the committee. It seems that they considered all the evidence of the facts in the case which was submitted to them, and there is nothing in the evidence heard upon the trial in the circuit court which proves any fraud, corruption, or misconduct of the members of the committee in making the decision, or any fraud upon the part of the prevailing party, which affected the decision of the committee. Before a court is authorized to set aside an award, the evidence supporting the grounds of impeachment must be clear and strong. Johnson v. Dulin, *supra*. Hence, the trial court did not err in directing a verdict for the appellees.

The original petition was a suit upon the contract embraced in the certificate of membership of Reager in the Voluntary Relief Department, and neither it nor any of the amendments to the petition mentioned the fact of the decision of the advisory committee, nor sought to have it impeached, which appears must have been done by either a petition or an amended petition. No relief was asked in the suit in the way of setting aside the decision, either on account of fraud or mistake nor was any action instituted or maintained for that purpose. Under sections 2515 and 2519, Kentucky Statutes, an action for relief from fraud or mistake must in all cases be instituted within five years from the discovery of the perpetration of the fraud or the making of the mistake, and when the action for that purpose is not instituted until more than five years, after the commission of the fraud or mistake, it must appear that by the exercise of reasonable diligence, it could not have been sooner discovered. Providence Assurance Society v. Withers, 132 Ky. 541; Bennett

Jellico Coal Co. v. East Jellico Coal Co., 152 Ky. 838; Dye v. Holland, 4 Bush 635; L. & O. R. R. Co. v. Bridges, 7 B. M. 556; Green v. Salmon, 23 R. 517; Cavanaugh v. Britt, 90 Ky. 273. The reply of the appellant did not contain any allegation that the alleged fraud or mistake was not known from the time the decision was rendered, or that it had been discovered within five years last past, or by the exercise of reasonable diligence it could not have been sooner discovered. Waiving the question as to whether the validity of the decision could be impeached upon the ground of fraud or mistake relied upon for the first time in a reply, at all, the reply contained the first effort of the appellant to secure relief from the effect of the decision of the advisory committee, and not having been made until eight or nine years after the alleged fraud or mistake was committed, the statute of limitations being a statute of repose, the plea of the statute of limitations was a defense to it and hence the court erred in sustaining a demurrer to the rejoinder.

Wherefore, the judgment is affirmed.