PIETRO A. GRANDILLO *v.* THE PENNSYLVANIA RAILROAD COMPANY, a corporation created by and existing under the laws of the State of Pennsylvania.

(*October* 13, 1932.)

Rice and Harrington, J. J., sitting.

*Arthur G. Logan* (of Marvel, Morford, Ward and Logan) for plaintiff.

*Clarence A. Southerland* (of Ward and Gray) for defendant.

Superior Court for New Castle County, Action of Assumpsit, No. 101, November Term, 1931.

HARRINGTON, J., delivering the opinion of the Court:

The plaintiff alleges that he was an employee of the defendant company and as such made a contract with that company whereby, based on a species of accident and disability insurance, he is entitled to receive from it certain sums of money, in the way of sick benefits, which it has refused to pay.

The amended seventh plea denies that the plaintiff's contract was with the defendant company. It sets up matters in defense of the plaintiff's right of action and not merely in abatement of the particular action brought, and is, therefore, a plea in bar and not in abatement. *Perry's Pl.* (1897), 177, 178; *Steph. Pl.* (1867), 302; 1 *Chitty's Pl.* 391. By reason of that fact, none of the rules applying to a plea in abatement, including the stage at which such a plea can be filed (*State v. Adair*, 1 *W. W. Harr.* (31 *Del.*) 558, 117 *A.* 20; *Culver v. P., B. & W. R. R. Co.*, 7 *Boyce* 76, 102 *A.* 980), apply.

The amended eighth and ninth pleas not only deny that plaintiff's contract was made with the defendant company, but also allege that it was made with a separate unincorporated Mutual Benefit Association of which the plaintiff was a member, and that he, therefore, cannot recover in this action because he has not exhausted his remedies under *Rule* 64 of the Regulations creating and governing such association.

Under a general demurrer no question as to whether any of these pleas are defective in form because they amount to the general issue can be considered (1 *Chitty's Pl.* 500) ; but whether the record shows that the plaintiff's contract was made with the defendant company, or whether its relief funds were administered by a separate and distinct unincorporated mutual benefit association, of which he was a member and with which his contract was made, is squarely raised, and is the important question for us to determine.

Under the regulations creating and governing the Relief Department of the Pennsylvania Railroad Company, any employee, whose application is approved by the Superintendent of the Department may, by making certain prescribed monthly payments, become a member of its "Relief Fund" so that in case of sickness, injury, etc., he may participate in the benefits offered by "The Voluntary Relief Department" of the Railroad Company.

Pursuant to the regulations these monthly payments are deducted by the Company from the wages due any employee agreeing to contribute to the Relief Fund, but no such employee is required to contribute to that fund.

General supervision of the operations of "The Voluntary Relief Department" is vested in "An Advisory Committee," composed of the Vice-President of the Pennsylvania Railroad Company in charge of personnel, who is the chairman of the committee, the Superintendent of the Department, who is its Secretary, a certain number of members elected by the Board of Directors of the Railroad Company from the contributing employees, and the same number of members elected by such employees from their own number. All vacancies in this committee in members elected by contributing employees are to be filled by the Vice-President of the Railroad Company, but all vacancies in members elected by the Board of Directors of that Company are to be filled by that Board.

This committee has the power to make by-laws "for its government" not inconsistent with the regulations of the Department.

Under *Rule* 64, it, also, has the right to hear such appeals from the decision of the Superintendent, rejecting claims of members of the Relief Fund as shall be presented to it; but outside of this power and of the power to see that the operations of the Department "are conducted in accordance with the Regulations," its powers are extremely limited.

It "arranges for the methods of choosing its members by contributing employees." It has the power to "direct the investment, and any changes therein, of money which is not required to be kept on hand for current use," but as we shall hereafter see the Relief Funds are actually held and invested by the Pennsylvania Railroad Company. This Committee may, also, propose amendments to the regulations of the "Relief Department," but, among other limitations on this right, the amendments so proposed must be approved by the Board of Directors of the Railroad Company.

The Superintendent is the executive head of the Department, and subject to the control of the Vice-President of the Railroad Company, has general charge of its business affairs. With the approval of the Vice-President, he may employ such persons as may be necessary to conduct the business of the Department, including medical examiners.

The fund, from which the proposed benefits are to be paid, is composed of the regular monthly payments of the contributing employees; from appropriations made by the Railroad Company, when necessary to make up any deficits there may be, if any; from the interest derived from invested funds, and from such gifts or legacies as may be made to the "Companies for the use of the Funds."

It is, therefore, apparent that no assessment on members, in addition to the regular prescribed monthly payments, can be made.

The Railroad Company supplies the necessary facilities for conducting the Department and pays all of its operating expenses. As a matter of fact, the office of the Superintendent is, also, located in such place as may be designated by the Vice-President of the Railroad Company. That Company holds, manages and invests the moneys belonging to the "Relief Fund," but in trust for the "Relief Department," and such funds are so invested by it in such securities as may be approved by the Board of Directors of the Company. Applications to participate in the benefits derived from the Relief Fund must be on forms specifically prescribed by the regulations of the Department. These applications, among other things, state that the employee applies "for membership in the Relief Fund" and consents and agrees to be bound by "the Regulations of the Relief Department of the said Company," etc. It also contains the following provision: "I also agree, That this application, when approved by the Superintendent, shall make me a member of The Relief Fund * * * and shall constitute a contract between myself and the said company. * * *"

Pursuant to authority to that effect, conferred by the regulations, what appear to be the other corporations composing a part of the Pennsylvania Railroad system have also associated themselves with that company in the management of their relief departments. This appears by a contract attached to the regulations adopted by that company and composing a part of the record.

This contract, among other things, provides: "That for convenience of designation, the joint operations of the said Relief Departments shall be conducted under the title of 'Pennsylvania System Voluntary Relief Department,' all applications by employees, and members, and the agreements therein made being, however, to and with the Company in whose service the applicants shall be, or have been employed."

The number of members of the "Advisory Committee" elected by the contributing employees of the Railroad Company from their own number; as well as the number elected by the Board of Directors of the various Railroad Companies comprising a part of the Pennsylvania system, also appears in the regulations. It may be a matter of minor importance in construing the effect of the regulations providing for the creation and administration of the Relief Fund, but perhaps we might add that it is apparent that the majority of such committee, even though its powers are limited, is composed of members selected by the Boards of Directors of the various companies composing a part of the Pennsylvania Railroad System; and this is true though no vacancies to be filled by such Boards occur.

As a matter of fact, in the language of Paragraph 1 of the Regulations: "The 'Voluntary Relief Department' is a Department of the service of the several Railroad Companies, respectively associated, as set forth in the agreement to which these regulations are attached, in the executive charge of a superintendent whose direction in carrying out his regulations are to be complied with, subject to the control of the Vice-President in charge of personnel."

Paragraph 3 also provides: "The object of this Department is the establishment of a fund to be known as 'The Relief Fund' for the payment of definite amounts to members contributing to the fund, who under the regulations shall be entitled thereto, when they are disabled by accident or sickness, and in the event of their death, to the relatives or other beneficiaries specified in the applications of such members."

Paragraph 24 of the Regulations further provides, in substance, that if a member of the Relief Fund of either of the companies which may, for the time being, be associated in the joint administration of the Relief Department shall be permanently transferred to the service of any such

companies, his membership shall be transferred to "The Relief Fund" of such other company "and his application and agreement as a member of the Relief Fund of the Company from whose service he is transferred shall thereupon become binding between such members and the company to whose service he is transferred."

In addition to the repeated use of the word "Department" it is significant that employees contributing to the Relief Fund are termed "members" of "the Relief Fund," and not of a designated association.

Without attempting to point out the essential characteristics of a Mutual Benefit Association, considering the regulations as a whole, and the contract attached thereto, it is apparent that the Relief Funds of the Pennsylvania Railroad Company are administered by a department of that company, and that the contract of the plaintiff was, therefore, with the Railroad Company and not with a separate and distinct unincorporated mutual benefit association of which the plaintiff was a member.

In fact, if anything but the creation of a railroad department for the benefit of its service was intended, how could the Pennsylvania Railroad Company agree with the other companies composing a part of its general system to administer their relief departments for them in conjunction with the administration of its own department? The question necessarily brings its own answer though the Railroad Company has seen fit to vest some slight powers in connection with the administration of this department in an "advisory committee" largely composed of contributing employees, and a minority of whom are elected by such employees.

Having reached that conclusion, for the purposes of this case, it is unnecessary for us to consider what would become of the funds of the Relief Department in case of the dissolution of the Railroad Company, or whether the contract in question though expressly excepted from the

provisions of the insurance laws of the state (*Section* 68, *chap.* 52, *p.* 229, *vol.* 37, *Laws of Delaware*) was, strictly speaking, an insurance contract or a mere labor contract, as was held in *Beck v. Pennsylvania Railroad,* 63 *N. J. Law* 232, 43 *A.* 908, 76 *Am. St. Rep.* 211, and in *Clements v. Railway Company* [1894], 2 *Q. B.* 482.

The conclusion that the regulation in question merely created a department of the Pennsylvania Railroad Company and that the plaintiff's contract was, therefore, with that company is supported in some degree by the following cases: *Nelson v. Atlantic Coast Line R. Co. Relief Department,* 147 *N. C.* 103, 60 *S. E.* 724; *Id.,* 157 *N. C.* 194, 72 *S. E.* 998, 52 *L. R. A.* (*N. S.*) 829; *Wolfstern v. Penna. R. R. Voluntary Relief Dept.,* 76 *N. J. Eq.* 78, 74 *A.* 533; *Beck v. Penna. R. R. Co.,* 63 *N. J. Law* 232, 43 *A.* 908, 76 *Am. St. Rep.* 211. *See, also, C., B. & Q. R. R. Co. v. Olsen,* 70 *Neb.* 559, 97 *N. W.* 831; *Koeller v. C., B. & Q. R. R. Co.,* 88 *Neb.* 712, 130 *N. W.* 420, 48 *L. R. A.* (*N. S.*) 440; *State, etc., v. Pittsburgh, etc., Ry. Co.,* 68 *Ohio St.* 9, 67 *N. E.* 93, 64 *L. R. A.* 405, 96 *Am. St. Rep.* 635; *Eckman v. C., B. & Q. R. R. Co.,* 169 *Ill.* 312, 48 *N. E.* 496, 38 *L. R. A.* 750; *Id.,* 64 *Ill. App.* 444; 4 *Elliott on Railroads* (*3d Ed.*) 434.

In support of his contention that the Relief Department of the defendant company was a separate mutual benefit association, the defendant's attorney cited *Carmody v. P. R. R. Co.,* 206 *Ky.* 219, 266 *S. W.* 1083; *P. R. R. Co., et al., v. Reager's Adm'r,* 152 *Ky.* 824, 154 *S. W.* 412, 52 *L. R. A.* (*N. S.*) 841, *Ann Cas.* 1915B, 312; *Id.,* 169 *Ky.* 479, 184 *S. W.* 395; *Wolfstern v. P. R. R., etc.,* 76 *N. J. Eq.* 78, 74 *A.* 533; *Voluntary Relief Dept. of C., B. & Q. R. R. Co. v White,* 41 *Neb.* 547, 59 *N. W.* 747; *Kinney v. B. & O. Employes' Relief Association,* 35 *W. Va.* 385, 14 *S. E.* 8, 15 *L. R. A.* 142, and *Mason v. Mason, et al.,* 160 *Ind.* 191, 65 *N. E.* 585.

In both of the Kentucky cases above referred to, the suit was brought against the Railroad Company as trustee of the Relief Fund, but it is apparent that it was conceded

that the regulations created a mutual benefit association, the funds of which were in the custody of the Railroad Company.

In *Burlington Voluntary Relief Department of C., B. &. Q. R. R. Co. v. White,* 41 *Neb.* 547, 59 *N. W.* 747, and *Kinney v. B. & O. Relief Association,* 35 *W. Va.* 385, 14 *S. E.* 8, 15 *L. R. A.* 142, the suits of the contributing employees, or their beneficiaries were also brought against the association and not against the railroad company but the Nebraska case is clearly inconsistent with the subsequent cases in that state, cited by the plaintiff's attorney, and it appeared from the West Virginia case that the relief funds of the Baltimore & Ohio Railroad Company were administered by an incorporated association.

In *Mason v. Mason, et al.,* 160 *Ind.* 191, 65 *N. E.* 585, the real controversy was between two persons claiming to have been named as beneficiaries by a deceased employee, who had contributed to the Relief Funds. The Court did say that the Pennsylvania Railroad Relief Funds were administered by a Mutual Benefit Association, of which the deceased had been a member, but the suit was directly against that Company and there is nothing to indicate that it was merely sued as trustee of the relief funds.

Further than that, the statement of the Court was, apparently, made without any specific analysis of the rules providing for the administration of the relief funds.

In *Wolfstern v. Pa. R. R., etc.,* 76 *N. J. Eq.* 78, 74 *A.* 533, while the Relief Department was originally made a party defendant with the Railroad Company, this was subsequently changed by amendment and it is clearly apparent that the Court held that the suit to recover Relief Fund benefits was properly brought against the Railroad Company because the employee had contracted with that Company.

This disposes of the seventh plea. It also disposes of the amended eighth and ninth pleas. These pleas are in

part based on *Section* 64 of the *Regulations of the Relief Department* and on the allegation that, though provided for therein, no appeal was taken from the decision of the medical examiner and the superintendent, respectively, that the plaintiff was able to work on February 10, 1930; and was, therefore, not entitled to any further sick benefits because he refused to accept the position then offered him by the company, and on and after that date was no longer an employee of that company. These allegations were based, however, on the preceding allegation in each plea that the relief funds were administered by a mutual benefit association of which the plaintiff was a member, and that *Rule* 64 was a rule of that association. From this it is contended that in the absence of an allegation of fraud, the plaintiff cannot recover in this action because he has not exhausted the remedies provided for by the rules of the association. *Del. Lodge, etc., v. Allmon,* 1 *Penn.* 160, 39 *A.* 1098; *King v. Wynema Council, etc.,* 2 *Boyce* 255, 78 *A.* 845; *Id.,* 3 *Boyce* 242, 82 *A.* 1076; *Kelly v. Trimont Lodge,* 154 *N. C.* 97, 69 *S. E.* 764, 52 *L. R. A.* (*N. S.*) 823, 840; *Lindahl v. Supreme Court Independent Order of Forresters,* 100 *Minn.* 87, 110 *N. W.* 358, 8 *L. R. A.* (*N. S.*) 916, 117 *Am. St. Rep.* 666; 49 *L. R. A.* 379, *note, etc.*

Whatever the real reason may be for the distinction between the effect of the rules of a mutual benefit association and clauses in ordinary contracts agreeing to submit future disputes to arbitration, as is provided in *Rule* 64 of the Regulations of the Pennsylvania Railroad Relief Department (*Randel v. Chesapeake & Del. Canal Co.,* 1 *Harr.* 233, 274; *Kinney v. B. & O. Relief Ass'n,* 35 *W. Va.* 385, 14 *S. E.* 8, 15 *L. R. A.* 142; *B. & O. R. R. Co. v. Stankard,* 56 *Ohio St.* 224, 46 *N. E.* 577, 49 *L. R. A.* 381, 60 *Am. St. Rep.* 745), it is not contended that *Rule* 64 applies to this case if the plaintiff's contract was with the defendant company, or an agency thereof, and not with a mutual benefit association of which he was a member.

For the reasons above given, the plaintiff's demurrer to the defendant's seventh, eighth and ninth amended pleas is, therefore, sustained.